CASE NO. _____ 12 cv 47 _____

ATTACHMENT NO. _____ 4 _____

EXHIBIT _____

TAB (DESCRIPTION) _____



<u>Reason for Transfer</u>:

This case is being transferred to North Area Office so more support can be given to family. Both Darrin and mother will need help in working out difficulties and in strengthening their relationship.

<u>Court</u>:

October 31, 1980, 80-11976, progress report

November 21, 1980, 80-4189, progress report (See court material)

80

CFS 497
Rev. 9/77

*SHATNER, DARRIN*       *SHATNER, DONALD & DOROTH,*
Name of Child                                Name of Family

## AGENCY AND FAMILY/CHILD PLANNING SHEET

Indicate Review:      ✓ 30 Day Review         _____ 6 Month Review

Period Covered: _____

FEDERAL SOCIAL SERVICE GOALS:    1 _____ Self Support     2 _____ Self Sufficiency

                                     3 _____ Protection of Children and Adults

                                     4 _____ Community/        5 ✓ Institutional Care
                                           Home Based Care

---

LONG RANGE GOAL:                                 DATE TO BE ACHIEVED

*For Darrin to return home w/ family*                *4-80*

OBJECTIVES — Immediate Plans:

FAMILY/CHILD OBJECTIVES:                DATES TO BE ACHIEVED

*For family and north area multi-service worker to work out plan & objectives*           *11-80*

WORKER'S SPECIFIC OBJECTIVES:              DATES TO BE ACHIEVED

*To transfer to North Area office*                 *11-1-80*

I have determined this case to be a protective service ~~situation based on~~

abuse     neglect     exploitation     abandonment     (runaway)

absence of caretaker

(Circle the one most appropriate reason.)

                                   *Gail Goldberg    10/25/80*

_____         _____
Family/Child Signature     Date        Worker's Signature       Date
(If none; reason)

                                 _____
                                 Team Coordinator's Signature     Date

Copy of Service Plan and Service Appeal Brochure
mailed / given to:
(Circle Appropriate Method)               _____
                         Name of person to whom material given     Date

81



**ARDEN SHORE home for boys**
P.O. Box 278  Lake Bluff, Illinois 60044  (312) 234-1730

October 30, 1980

Ms. Gail Goldberg
Department of Children & Family Services
2020 West Roosevelt Road
Chicago, Illinois  60608

Re: Darrin W. Shatner
b. 07-12-67

Dear Ms. Goldberg:

This is Darrin's third progress letter since entering Arden
Shore July 29, 1980.

As Darrin's group leader, I see him as a young man who has
shown he can give his group some really dynamite help when
he isn't playing a fool and trying to aggravate his group
members.  Darrin is talking more about his problems, but
does he want help from his group or does he want his group
to feel sorry for him?

In school, the teachers say Darrin has shown he can give good
help to other group members when they are having trouble with
their math.  When is Darrin going to choose to help himself?
Who does Darrin think he is hurting by not completing English
assignments?  Darrin has the ability, but when is he going to
motivate himself to get an education instead of using most of
his energy to try to aggravate his group members?

In the dorm, staff see Darrin doing a good job of helping others
when he isn't feeling sorry for himself.  He will talk about his
bad feelings, but how often is Darrin putting to use the help
the group is giving him?  It's true that Darrin is using some
of the help because he didn't show as many silly problems this
month, but why show any unnecessary problems?

The group often sees Darrin reacting to their help instead of
taking a look at it, but at least he will deal with it alot
sooner.  The group also sees Darrin needing to talk about his
stealing problem since he stole a watch and a cigarette this
month.  The group says Darrin knows where stealing got him out
in the community so they are wondering why he is still doing it.
The group says Darrin is working on getting his easily misled
problem under control, but they still believe he needs more help
on it because he will still, at times, give up on his group
members and go along with their inappropriate behavior.

Licensed by the State of Illinois. Department of Children and Family Services
Approved by the Chicago Association of Commerce and Industry
Member Child Care Association of Illinois

To: Ms. Goldberg  Re: Darrin Wayne Shatner  10/30/80 – page two

Darrin sees himself needing to get others to feel sorry for him.  He doesn't want to realize that he will need to quit fantasizing about the way things should be and needs to start dealing with things the way they really are.  Life is not a fairy tale where magically everyone lives happily ever after.

Darrin has been visited by his parents this month and he is showing them the respect they deserve.  He is no longer threatening or talking back to them.  They have told him they are splitting up.  Does Darrin really believe that or does he think they will get back together again?  Darrin has shown a very mature attitude when helping the handicapped people at Grove School and the Waukegan Developmental Center.  Darrin needs to show that maturity more often throughout the day.

Respectfully,

*Edward Bellevage*

Edward Bellevage
Acting Group Leader

EB:nm

P.S.  Darrin's projected release date is April, 1981, to home of mother.

cc: P.O. Karen Brucks

83



**ARDEN SHORE home for boys**
P.O. Box 278  Lake Bluff, Illinois 60044  (312) 234-1730

November 5, 1980

Ms. Gail Goldberg
Department of Children & Family Services
2020 West Roosevelt
Chicago, Illinois  60608

Re: Darrin Shatner
    b. 07-12-67
    Three-Month Summary

Dear Ms. Goldberg:

This is Darrin's three-month summary.  He entered Arden Shore on July 29, 1980.

Darrin spent his first month of placement trying to deny any responsibility for his actions.  He constantly would want his peer group's attention to be focused on him.  He would act out by throwing little temper tantrums or he would act like he was crying and the whole world was against him.  He would always say that others caused him to behave inappropriately and he would get very defensive when that responsibility was placed on him.

The same type of behavior continued during Darrin's second month of placement.  Also, Darrin would try to aggravate his peers by putting them down.  During this month, Darrin was in-formed by his parents that they were separating and eventually divorcing.  Darrin really didn't believe this.  He believes they will get back together again.

During Darrin's third month of placement, he began to take things more seriously more often.  He would help his peers more, although at times he would still try to aggravate them.  He would not go along with their inappropriate behavior as often which showed he was taking more responsibility for his own behavior.  He still isn't dealing with the separation of his parents.  He believes it is only a temporary thing.  This is something he still needs to deal with.  Darrin did not show as many silly problems this month, but he showed more of the problems that got him into trouble in the community, things like stealing and acting out in school which shows Darrin is being himself more.

During this period, Darrin attended sixty-three (63) group meet-ings with the meeting focused on him seven (7) times.

Licensed by the State of Illinois, Department of Children and Family Services

Approved by the Chicago Association of Commerce and Industry

Member Child Care Association of Illinois

84

To: Ms. Goldberg    Re: Darrin W. Shatner, 3-month summary,
                                    11/5/80 - page two


There was an incident report written when Darrin ran away.

Our nurse submits the following medical report for this
period:
7/29/80:  Admitted to Lincoln group.  Transferred from Sunny
          Ridge.  Health records being sent.
8/22/80:  Complete physical by Dr. Schwartz.  Overweight by
          about 10 lbs; otherwise, normal findings.

Attached is an academic progress letter submitted by Darrin's
teachers for the period September to October, 1980.

Darrin's parents have visited six (6) times since he was placed.

                        Respectfully,

                        *Edward Bellevage*

                        Edward Bellevage
                        Acting Group Leader


EB:nm
Att.


cc: P.O. Karen Brucks

85

## JUVENILE COURT LIAISON PROGRESS REPORT

Date 11-18-80  
Calendar 22

Time Period Covered 6/80 - 11/80

Child's Name SHATNER DARRIN

Birthdate 7-12-67

I.D. No. X784-80-01

Contact Dates: _____

**NATURAL PARENTS:**

Mother SHATNER, DOROTHY          Address 800 W. LARAMIE GLENVIEW

Father SHATNER, DONALD           Address 800 W. LARAINE GLENVIEW

**FOSTER PARENTS:**

ARDEN SHORE HOME FOR BOYS        Address P.O. BOX 278 LAKE BLUFF, IL

Date of Placement 7-29-80 - 4-81    Legal Status G.A.    Date 6-5-80

### CURRENT INFORMATION ON:
(Please do not be limited by line space; use back if needed)

**CHILD: (adjustment and progress)** DARRIN ENTERED ARDEN SHORE HOME ON JULY 29 1980. AT FIRST, DARRIN HAD A DIFFICULT PERIOD OF ADJUSTMENT DARRIN SPENT HIS FIRST MONTH OF PLACEMENT TRYING TO DENY ANY RESPONSIBILITY FOR HIS ACTIONS THE SAME TYPE OF behavior

**PROBLEMS:** DARRIN HAS NOT SHOWN AS MANY "silly" problems (aggravating others & clowning around), but he still has showed

**NATURAL PARENTS: (involvement-situation)** DARRINS parents have visited six time since he was placed. Darrin has recently been informed by his parents that they were separating and eventually divorcing. Darrin really has

**INTERESTED RELATIVES:** NONE

**LIVING ARRANGEMENT:** Prior to Arden Shore placement Darrin was placed at Sunnyridge Residential Treatment Center. His date of admission was June 19, 1980. He had a very difficult time adjusting to program, due to his age and immaturity. During this placement he had attacked

**PRIVATE GUARDIAN:** _____

**PLANS AND RECOMMENDATIONS:** Projected release date from Arden Shore is April 1981. At this time he should be returned home to mother. Darrin and mother will need support in strengthening their relationship.

OFFICE 2026 North Intake

CASEWORKER Gail Goldburg

86



**ARDEN SHORE home for boys**

P.O. Box 278  Lake Bluff, Illinois 60044  (312) 234-4730                December 4, 1980

Ms. Gail Goldberg
Department of Children & Family Services
2020 West Roosevelt
Chicago, Illinois  60608                 Re: Darrin W. Shatner
                                             b. 07-12-67

Dear Ms. Goldberg:

This is Darrin's fourth progress letter since entering Arden
Shore on July 29, 1980.

As his group leader, I see Darrin as a young man who is helping
his group alot more than in the past. At the same time he is
also helping himself more, but he was still seeing acting a fool
as a solution to some of his problems. When is Darrin going to
consistently talk maturely about his feelings instead of hoping
he can play them away?

In school, the teachers say Darrin has started to motivate. He
has made up assignments so he has earned a grade in math and
careers instead of an incomplete. When will Darrin earn a grade
in his remedial class? Darrin will still try to pretend he doesn't
understand his assignments when he doesn't want to do his assign-
ments. Darrin has made alot of progress this month, but how much
more could he have made. What kind of progress has Darrin made
as dormwork captain?

In the dorm, staff see Darrin helping others more and giving up
less. He is talking more about his own family situation and is
trying to resolve his feelings about that. Darrin will still have
a defensive attitude when others bring some good points to him
which shows Darrin is not working as hard as he could. Darrin
will often play dumb, forget books, or look for sympathy instead
of working on his problems seriously. Does Darrin think this is
how you get a home visit?

The group sees Darrin putting more effort into helping them be-
come greater. Why does Darrin try to tear that down by aggra-
vating his group members? The group wants Darrin to be able to
handle his responsibilities alot better. He did a poor job hand-
ling the group's matches and he is constantly allowing group members
to go to school with incomplete dormwork. Is this taking care of
the business? When Darrin wants to he can be a dynamite group
member, so why does he slow himself down by not handling his
responsibilities?

Licensed by the State of Illinois. Department of Children and Family Services
Approved by the Chicago Association of Commerce and Industry
Member Child Care Association of Illinois

87

To: Ms. Goldberg   Re: Darrin Wayne Shatner   12/3/80 — page two

Darrin sees himself as having to "put on a show" when he feels badly. Darrin wants to embarrass himself when he is feeling bad. He will do things like write on his arm or throwing milk in the dining hall. Does doing this help Darrin solve his problems?

Darrin has received visits from his father this month. He is starting to be more honest with him about his feelings. He can talk to his father without playing games. When will he do that more often with his group?

Respectfully,

*Edward Bellevage*

Edward Bellevage
Acting Group Leader

EB:nm

P.S.   Darrin's projected release date is April, 1981 to home of mother or father.

cc" P.O. Karen Brucks

88

## ACADEMIC PROGRESS LETTER

Name: **Darrin Wayne Shatner**
Group: **Lincoln**

Period from: **11/1/80** to: **1/16/81**
Grade level:
(If appropriate) **8th**

| Course | | C | | |
|---|---|---|---|---|
| **Math** Darrin seems to deliberately waste time or lose papers in math. His accuracy and understanding of the material have greatly improved. However he has completed far too few assignments to progress satisfactorily. | | | | |
| 2. **English** Darrin's effort in spelling and reading have resulted in good progress. He needs to work on making his thoughts clearer in writing by improving his sentences and his handwriting. | | C | S | C |
| 3. **Constitution** Darrin has put forth very minimal effort. He seems to prefer to try to hide his assignments rather than get help with them. Darrin has a good understanding of the material when he really applies himself. He needs to put forth more effort in completing his work, and less in avoiding it. | | | D | D |
| 4. **P.E.** | | C | B | B |
| 5. **Remedial** When Darrin tries to do his remedial work, he earns A's and B's. Darrin did not try to do his work this 9 weeks and wasn't able to earn a grade. It seems that what Darrin did put real effort into was trying to fail. | | C | V | |

ATTITUDE:

COMMENTS:

Student

Teacher

Principal

89

State of Illinois

Department of Children and Family Services

# CASE NOTES.

Case Name _Shatner, Darrin_    Worker _Goldberg, Gail_

Type of Case: _____ family; _____ child; _X_ _____ foster family; _____

inter-agency _____

Date: _11-19-80_

Edw. Bellman - Aide share worker child D.C.F.S. Worker. He informed worker that Darrin's parents are definitely getting divorced. His concern is that Darrin might be fought over by parents. It is necessary that meeting be arranged to discuss plans for Darrin's release. A decision needs to be made on where Darrin will be going, rather which parent will be taking him. Worker can contact Mrs. Shatner at work. Her wt # is 965-9494.

This form (both sides) is to be used for recording case notes on all types of cases.
Check "type of case" to expedite filing in the case record.

CFS 492
Rev. 9/72

90



**ARDEN SHORE home for boys**
P.O. Box 278  Lake Bluff, Illinois 60044  (312) 234-1730

Jan. 2, 1981

Ms. Gail Goldberg,
2020 W. Roosevelt Rd,
Chicago, Ill. 60608

Dear Ms. Goldberg,

This is Darrin's fifth progress letter since entering Arden Shore.

As Darrin's group leader I see him as a young man who still will allow his feelings to tear him down. Instead of being man enough to talk about them, Darrin chooses to act like a five-year old before he decides to maturely deal with his problems.

In school the teachers say that Darrin has shown very little progress this month. Darrin would rather lose his math. assignment instead of doing the assignment. When is Darrin going to work in school instead of failing by losing papers, playing the fool or being easily misled. When will Darrin use his creativity to succeed rather than fail. Maybe Darrin wants mommy and daddy to take care of him the rest of his life.

In the dorm, staff see Darrin giving his group good help when he is choosing to act maturely. Does Darrin mean what he says? It seems he doesn't always follow his own advice. Staff never heard Darrin help others by telling them to play his problems away, yet that is often Darrin's solution to his problems.

The group sees Darrin talking a lot about what he needs to do, but when it's time to back those words with actions, he often will choose to do just the opposite. Why doesn't Darrin have the confidence to talk about his feelings before he needs to look like a fool. Does Darrin enjoy constantly looking for negative attention.

Darrin sees himself needing to play games to let his group know he feels bad. Does Darrin have a mouth? Can he talk about his feelings before he finds it necessary to act like a baby. Why doesn't Darrin believe in himself?

Darrin always gets visits from his mother and his father. He tells them he will work on his problems and then will act like a fool. Does Darrin enjoy lying to his parents?

Respectfully, *Edward Bellevage*
Edward Bellevage

Licensed by the State of Illinois, Department of Children and Family Services
Approved by the Chicago Association of Commerce and Industry
Member Child Care Association of Illinois

P.S. Darrin's projected release date April, 1981 to home of mother.

91



**ARDEN SHORE home for boys**
P.O. Box 278, Lake Bluff, Illinois 60044 (312) 234-1730

February 11, 1981

Ms. Marilyn Harman
Department of Children & Family Services
4320 West Montrose Avenue
Chicago, Illinois 60641

Re: Darrin W. Shatner
b. 07-12-67
Closing Summary

Dear Ms. Harman:

This is the closing summary for Darrin who entered Arden Shore on July 29, 1980.

During Darrin's last month of placement, he continued to show that even though he could talk about his feelings, he still found it necessary to act babyfied afterwards.

In school, Darrin spent a lot of time sabotaging his work to avoid success. Attached is an academic progress letter submitted by Darrin's teachers for the period November 1, 1980 to January 16, 1981.

On January 30, 1981 during a dispositional hearing, Darrin chose to take what he considered the easy way out and go to the Audy Home. Darrin was discharged from program on January 30, 1981.

During the period covering from November, 1980 to January 20, 1981, Darrin attended sixty-six (66) group meetings with the meeting focused on him nine (9) times.

No incident reports were filed during this period.

Our nurse reports Darrin has not required medical attention during this period.

Respectfully,

Anthony Conley
Group Leader in Training

AC:nm
cc: P.O. Karen Brucks

Licensed by the State of Illinois Department of Children and Family Services
Approved by the Chicago Association of Commerce and Industry
Member Child Care Association of Illinois

92

## JUVENILE COURT LIAISON PROGRESS REPORT

4-3-81                                      Time Period Covered 2  4-3-81

22

Name _Darrin Shatner_                       Birthdate _7-12-67_

X 754-80-01

Dates: 3-31-81 + phone calls

AL PARENTS: _Dorothy Shatner_               Address 855 Love St, Elk Grove

_Gerald_                "                   Address 3705 W. Palmer, Chgo.

PARENTS: ____                               Address ____

Placement ____          Legal Status ____        Date ____

### CURRENT INFORMATION ON:
(Please do not be limited by line space; use back if needed)

D.S. (adjustment and progress) Darrin returned home on 3/28/81 after 1 in Audy per his request. He is presently in a 30 evaluation program in school in Elk Grove. Mrs. Shatner to finish Beauty School in 7/81 + get her license in 7/81 passes the state board. She has applied for P.A. 1-81 + receives food stamps from the Village. She receives no money from Mr. Shatner filed for divorce + it is pending. Darrin chose him with his mother, but will now have his own in the home. There is some adult supervision RESTED RELATIVES: when Darrin returns home from school + has an 8PM curfew. He seems happy + Mrs. Shatner states she has had no problems with him. Mrs. Shatner signed up for the WIN program on 30-81. As soon as she gets her green card she will have a D & C. Darrin visits his father on 20-81 + the visit seemed to go alright. Mr. Shatner lives with another woman + her 2 children. IS AND RECOMMENDATIONS: Until Mrs. Shatner's situation settles financially, etc. continued supervision recommended.

DAO                    CASEWORKER  M Harmon

4

93

**COURT INFORMATION SHEET**

DATE OF HEARING APR · 3 1981   OFFICE _NAO X_ CASEWORKER _C. Schneidmann_

CHILD _Shatner, Derrin_   B.D. _1/12/67_   CT# _80-4189_
_79-15198_

DATE OF NEXT HEARING _5/8/81_ TIME* _9_ (A.M)/P.M. CALENDAR _22_

DISPOSITION:

____WRITTEN PROGRESS REPORT _____

____WORKER TO BE PRESENT _____ _____BRING CHILD_____

____CONTINUED TO SERVE SUMMONS/PUBLISH ON _____

____COMPLETE SOCIAL INVESTIGATION (FOUR TYPED COPIES)_____

____CONTINUED FOR PROVE UP/DISPOSITION_____

____SET FOR TRIAL/HEARING_____

____ADVANCE CASE FROM_____

____FINDING OF NEGLECT/ABUSE/DEPENDENT/M.I.N.S./DELIQUENT/UNFITNESS____

____A.J.V. APPOINTED TEMPORARY CUSTODIAN/GUARDIAN/VRTCTA_____

____PRIVATE GUARDIAN/CUSTODIAN APPOINTED_____

____CONTINUED FOR CLINICAL SERVICES (SUBMIT SOCIAL WITH FACE SHEET TO LIAISON)

____JUVENILE ARREST WARRANT ISSUED/QUASHED/EXTENDED/EXECUTED_____

____HELD IN CUSTODY/RELEASED TO_____

____SUPERVISION/PROBATION-ORDERED, EXTENDED, TERMINATED_____

____CASE PLACED ON GUARDIANSHIP CALENDAR_____

____TEMPORARY CUSTODY/GUARDIANSHIP VACATED_____

_X_ CASE CLOSED _79-15198_

____OTHER_____

____COMMIT TO D.O.C./D.C.F.S._____

_Cont'd - 80-4189_

DCFS LIAISON _Barbara D. Quinn_   PHONE _739-8434_

**JUVENILE COURT LIAISON PROGRESS REPORT**

te _6/26/8_     Time Period Covered _5/2/81_ to _6/26/81_

ndar _22_

d's Name _Darren Shatner_     Birthdate _7-12-67_

. No. _X 784-80-01_

tact Dates: _6/22_

**TURAL PARENTS:**
her _Dorothy Shatner_     Address _855-Lone Elk Grove_
her _Donald "_     Address _Palmer Sqrone, Chicago_

**STER PARENTS:**

     Address _____

e of Placement _____     Legal Status _GO_     Date _5-14-80_

**CURRENT INFORMATION ON:**
(Please do not be limited by line space; use back if needed)

HILD: (adjustment and progress) _Has gotten into trouble while visiting his father. He stole a bike & is to be in court (date unknown) in Elk Grove. regarding Matter mother has to be extremely strict with Darren to_

PROBLEMS: _keep him on line. Darren graduated from grade school, although it was previously a social promotion._

NATURAL PARENTS: (involvement-situation) _Parents are in the process of getting a divorce. Darren visits his father on week-ends_

NTERESTED RELATIVES: _____

IVING ARRANGEMENT: _Darren lives with Mother & step-grandmother_

RIVATE GUARDIAN: _____

LANS AND RECOMMENDATIONS: _Continued placement of Darren with Mother. Offer support service to Mother._

ICE _cAO_     CASEWORKER _M Herron_

S 2B-4
ck)

95

COVENANT CHILDREN'S HOME AND FAMILY SERVICES
302 Elm Place
Princeton, Illinois   61356

- - - - - - - - - ⬤ - - - - - - - - - ⬤ - - - - - - - - -

## CHILD DATA INTAKE SHEET

Date of Referral _____8-20-81_____
Date of Placement _____

CHILD'S NAME _____Shitner_____ _____Darrin_____ ALIAS _____
LAST          FIRST      MIDDLE
ADDRESS AT TIME OF REFERRAL _833 Love_ _Elk Grove Village_
No.   STREET   CITY   STATE   COUN

SOURCE OF REFERRAL _DCFS - NAO_
_____ Worker's Name _Marilyn Harmon_
Phone No. _(312) 282-9470_
REASON FOR REFERRAL _Child needs structure, work on_
_family, behavior & authority problems_

SEX: FEMALE ___ : MALE _X_ : RACE _White_ BIRTHDATE _7_ _12_ _67_
MO.   DAY   YR.
PLACE OF BIRTH _Chicago_ _Ill_ _Cook_ (Attach copy of Birth
CITY   STATE   COUNTY   Certificate.)
CHURCH AFFILIATION _Baptist_
SOCIAL SECURITY NO. _35 7- 54-2803_ : MEDICAL I.D. NO. _____
HEIGHT _68_ : WEIGHT _149_ : COLOR HAIR _Blonde_ : COLOR EYES _Blue_
HANDICAP: YES ___ ; NO _X_ : a.) RETARDED ___ ; b.) EMOTIONAL _X_ ;
c.) OTHER ___ ; (EXPLAIN _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEGAL GUARDIAN:   PARENT ____   OTHER _X_
NAME AND ADDRESS OF LEGAL GUARDIAN _Anthony J. Vermeio_
_4320 W Montrose, Chicago_
PHONE NO. WORK HRS _3/24 282-9470_ : PHONE NO. AFTER WORK HRS. _793/2180_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SCHOOL GRADE _9_ : SCHOOL LAST ATTENDED _Elk Grove Jr. Hi_
(NAME)
SP. ED CLASS _____
LEARNING DIS. _____   ADDRESS: _Elk Grove Blvd._
(STREET)
BEHAVIORAL _✓_   _Elk Grove Ill_
REGULAR _____   CITY   STATE   ZIP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAST PHYSICAL EXAM _/_ _/_
MO.   DAY   YR.   DR. NAME AND ADDRESS
LAST DENTAL EXAM _/_ _/_
MO.   DAY   YR.   _ AND ADDRESS
LAST OPTICAL EXAM _/_ _/_   96   DR. NAME AND ADDRESS
MO.   DAY   YR.

- 2 -

MEDICAL INFORMATION (continued)

M. V.D. TESTS

Name _____          Results _____

_____                        _____

N. REFER BACK TO SECTION I.  If the student has been on medication
or is taking any now, please list the medication, dosage, why it
was prescribed and by whom prescribed: _____

_____

_____

_____

O. DEVELOPMENTAL HISTORY
   a. Crawled at what age? _6 mos._
   b. Walked at what age? _9 mos_
   c. Talked at what age? _2 years_
   d. Toilet trained at what age? _2 years_
   e. Other _____

_____

_____

P. GENERAL COMMENTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

Submit to:

COVENANT CHILDRENS HOME AND FAMILY SERVICES
502 Elm Place
Princeton, Il.   61356

01-02-1978

97

PAGE TWO

# CHILD DATA INTAKE SHEET

FAMILY DATA SHEET (PARENTS)

FATHER: NAME _Shetrey, Donald_     SOC. SEC. NO. _Unk_
                LAST         FIRST       MIDDLE

ADDRESS _Unknown_
      NO.     STREET         CITY        STATE       COUNTY

BIRTHDATE _____  BIRTHPLACE _____
       MO.  DAY  YR        CITY       STATE    COUN

TELEPHONE ( ) - ____  VETERAN: YES ____: NO ____:

NAME AND ADDRESS OF EMPLOYER _Unknown_

_____: PHONE ( )

MARITAL STATUS: MARRIED ____: NOT MARRIED ____: DIVORCED X : _In proce_
                SEPARATED ____: OTHER ____: (EXPLAIN _____

NAME OF SPOUSE _____
           FIRST         MIDDLE        MAIDEN

DATE OF MARRIAGE _____ ; PLACE OF MARRIAGE _____

OTHER MARRIAGES _____

=====================================================================

MOTHER: NAME _Shetrey / Dorothy /_     SOC. SEC. NO. _____
              LAST       FIRST     MIDDLE

ADDRESS _____
     NO.    STREET      CITY      STATE     COUNTY   Z

BIRTHDATE _____  BIRTHPLACE _____
                     CITY       STATE     COUNT

TELEPHONE ( ) _____  NAME AND ADDRESS OF EMPLOYER _____

_____ (PHONE _____

MARITAL STATU : MARRIED ____: NOT MARRIED ____: DIVORCED X : _In proce_
               SEPARATED ____: OTHER ____ (EXPLAIN _____

NAME OF SPOUSE _____
          FIRST        MIDDLE        MAIDEN

DATE OF MARRIAGE _____ ; PLACE OF MARRIAGE _____

OTHER MARRIAGES _____

=====================================================================

FINANCIAL RESPONSIBILITY:

WHO WILL ASSUME? _DCFS_

TERMS AND CONDITIONS: _____

_____

_____

98

PAGE THREE                    CHILD DATA INTAKE SHEET

IRONOLOGY OF CHILD'S PREVIOUS LIVING ARRANGEMENTS:

| WITH WHOM | FROM WHEN | TO WHEN | REASON FOR LEAVING |
|---|---|---|---|
| Arden Shore | | 2-81 | 1) Not benifiting from |
| Parents-Mother | 3-1-81 | 8-81 | program |
| Shelter Inc | 8-81 | 9-81 | 2) Mother unable to care |
| Audy Home | 8-81 | 10-81 | for child |
| | | | 3) short-term + store |
| | | | cris |
| | | | 4) Placement |
| | | | |
| | | | |
| | | | |

HER CHILDREN OF PARENTS

| NAME | SEX | AGE | RELATIONSHIP TO MOTHER  FATHER | CURRENT WHEREABOUTS SCHOOL GRADE / EMPLOYMENT |
|---|---|---|---|---|
| None | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

HERS IN HOUSEHOLD

| NAME | SEX | AGE | RELATIONSHIP | OCCUPATION |
|---|---|---|---|---|
| None | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

99

Case: 1:12-cv-00047 Document #: 1-1 Filed: 01/04/12 Page 22 of 70 PageID #:291

# CHILD DATA INTAKE SHEET

## INTERESTED RELATIVES

| NAME | ADDRESS | RELATIONSHIP |
|------|---------|--------------|
| Dorothy Shatner | | Mother |
| | Phone: / | |
| Dmoed Shatner | Unknown | Father |
| | Phone: / | |
| 3. | | |
| | Phone: / | |
| 4. | | |
| | Phone: / | |

## OTHER INTERESTED PERSONS OR AGENCIES:

| NAME | ADDRESS | RELATIONSHIP |
|------|---------|--------------|
| 1. DCFS | | |
| | Phone: / | |
| 2. | | |
| | Phone: / | |
| 3. | | |
| | Phone: / | |
| 4. | | |
| | Phor 100 | |



**Larkin HOME for children**

MICHAEL R. HORWITZ, A.C.S.W., Executive Director

1212 LARKIN AVENUE • ELGIN, ILLINOIS 60120 • 312/695-5656

August 24, 1981

Diane Johns
Department of Children
and Family Services
2020 W. Roosevelt
Chicago, Illinois 60608

Dear Ms. Johns:

I received your referral on Darrin Shatner.

Darrin's referral certainly suggests he can benefit from
long term treatment.

Unfortunately we are filled to capacity with no anticipated
discharges for five months.

Thank you for referring Darrin.

Sincerely,

Eileen Sheahan
Residence Director

ES/rb

101

Diane Johns
Residential Placement Worker
Department of Children and Family Services
2020 West Roosevelt Roade
Chicago, Il.  60608               Re:  Shatner, Darrin

Dear Diane Johns,
     Please forgive the delay in answering your request for
placement.  St. John Children's Home is no longer operating.
We officially closed as of June 30, 1981.

                            Sincerely,

                         Peter Cerneka III
                     Assistant Director
Catholic Social Services
Belleville Diocesee
8315 State St.
East St. Louis, Il.  62003
Former Director of
St. John Children's Home

102





**HOYLETON**

⬡ CHILDRENS HOME • BOX 218 • HOYLETON, IL 62803
618-493-7382
☐ GROUP HOMES • 112 S. MARKET • MARION, IL 62959
618-997-9418
☐ ADOLESCENT SERVICE PROGRAM • 36 LOISEL VILLAGE • E. ST. LOUIS, IL 62203
618-398-0900

August 27, 1981

**MANAGING COMMITTEE:**

THE REV. RODNEY WELLS
CHAIR

MR. LYNN BERSCHE
VICE CHAIR

MISS MARY YOWELL
SECRETARY

MRS. EILEEN WIEGMANN
TREASURER

   ILLINOIS

THE REV. JEAN BLOEBAUM

MRS. NELLIE DAUDERMAN

MRS. FRIEDA FEIG

MRS. ROSEANNE FRANKE

MRS. ELEANOR GARCIA

THE REV. WAYNE GROAT

MRS. GAYLE HOOD

MR. PHIL JONES

THE REV. RAY KISTLER

MR. ROY LEE

MRS. ADELHEID LUHR

DR. STEVEN NUERNBERGER

MR. GEORGE OBERNAGEL III

THE REV. RON RUGGLES

MR. WILLIAM WESTFALL

   INDIANA

MR. GARY BALDWIN

THE REV. JAMES MENNERICK

THE REV. CRAIG REED

**STAFF:**

DR. PAUL SCHIPPEL
EXECUTIVE DIRECTOR

RICHARD WALKER, ACSW
PROGRAM DIRECTOR

DAVID L. JOHNSON
DIRECTOR-GROUP HOMES

LUCKY HOLLANDER, MS
DIRECTOR-ADOLESCENT SERVICE
PROGRAM

**MEMBER:**

UNITED CHURCH OF CHRIST
COUNCIL FOR HEALTH &
WELFARE SERVICES

NATIONAL ASSOCIATION OF
HOMES FOR CHILDREN

CHILD CARE ASSOCIATION
OF ILLINOIS

Ms. Diane Johns, Residential Placement Worker
Department of Children and Family Services
Chicago North Area Office
2020 West Roosevelt Road
Chicago, Illinois  60608

               Re:  Darrin Shatner
               d.o.b.  7/12/67

Dear Ms. Johns:

Thank you for the referral on Darrin Shatner.  I am returning the referral information sent to us.  I do not feel that Darrin is an appropriate candidate for placement at Hoyleton Children's Home.

Referring to the letter dated July 18, 1980 from Sunny Ridge Family Center which states Darrin's frequency of rages, attacks on others, threats to self, and threats to others, I feel he would not be able to function with the population we currently have.

Once again, thank you for the referral.  If I can be of assistance to you in the future do not hesitate to contact me.

Sincerely,

Richard Walker, ACSW, CSW
Program Director

RW/tmg

Enc.

SHELTER, INC.

CLOSING SUMMARY:  Darrin Shatner
                  9/24/81

Darrin Shatner, Age 14, was referred to Shelter, Inc. on 8-5-81 by Marilyn Harmon
of DCFS.  Darrin was in need of temporary, short-term foster care while permanent
placement would be planned for.  Since the age of 12, Darrin has been a ward of
the state as a result of  MINS violations.  Since then he became involved with
the probation department,  the latter resulting from the robbery of a bike shop.
Prior to Shelter, Darrin was placed in two separate therapeutic institutions, both
of which failed due to Darrin's inability to conform.

The goals of the placement were:
   1.  Provide a therapeutic and nurturing environment.
   2.  Maintain communications with the referral source.
   3.  Provide physical shelter and care.
   4.  Terminate the placement when an appropriate placement was secured by DCFS.
These goals have been partially met, since Darrin ran away on 8-23-81.  It should
be noted that Darrin's runaway was highlighted by the theft of the Shelter car,
after stealing the keys from a file cabinet which was located in an area restricted
from the residents.  This action is viewed by the staff as planned and calculated,
since Darrin removed parts of telephones and deflated tires of  staff car prior
to leaving the premises.

During his stay at Shelter, Darrin had limited contact with his mother.  Mrs. Shatner
visited Darrin on two occasions.  Once for lunch and the second time for a shopping
outing.  Darrin seemed to enjoy the visits even though they left him with mixed
emotions.  Subsequent to these visits, Darrin sought out staff persons to talk with.
It became evident that Darrin viewed himself in a position of hopelessness and despair.
He placed the entire blame on his mother for not being able to provide adequate care
for him.  At the same time Darrin is unable to see how his action contributed to his
removal from the family.  Furthermore, the feelings toward his mother are a source
of continuous conflict.  On one hand Darrin wishes to be close to his mother but on
the other hand he is extremely angry at her,  viewing her as the major contributor to
the divorce from Mr. Shatner.

During placement Darrin strived for acceptance by the other residents.  However he was
unable to form positive relationships with peers, primarily because his interactions
were from an assumed position of superiority, either because of past experiences or
prior possession of material goods, real and unreal.

The unrealistic stories which Darren was able to come up with were of great concern
to Shelter staff.  Darrin's reality boundaries are questionable since he was unable to
admit that some of the things he was telling were untrue.  Ownership of rare cars,
motorcycles, material goods, and illegal activities were the predominant subjects of
his stories.  In individual counseling sessions Darrin was defiant and assumed the
role of the victim without exception.  Darrin's most appropriate behavior was his
ability to accept responsibility for his share of chores, which were done on a daily
basis.

Even though Darrin's behavior makes it difficult to get close to him, he is a likeable
boy.  At times he was able to engage in unpretentious conversations, especially when
the subject was of mechanical (machine) nature.  During such periods his defenses were
lowered and a very needy and hurting boy emerged.

104

CLOSING SUMMARY:  Darrin Shatner
Page 2

Due to the runaway, he did not receive a physical examination.  He did appear to be
of normal physical development and in good health.

It is the impression of this writer that Darrin's problems are a result of family
instability and unresolved conflicts stemming from and towards his parents.
Psychological and psychiatric testing is recommended, to determine the extent to
which those conflicts interfere with normal behavior.

> Jovan Kadar
> Group Home Worker

TREATMENT REVIEW NO. 1

SHATNER, Darren                                    December 18, 1981
Birthdate: 07-12-67
Admission Date:  10-06-81

---------------------------------------------------------------

PERIOD COVERED:  10-06-81 to 12-18-81

CHILD CARE WORKER REPORT:  Kevin Epley

Narrative:

Since Darren has arrived at Covenant Childrens' Home, he has under-
gone roommate changes, stemming from problems with getting along
with those boys he shared a room with.   Darren shares a room.
with two black boys.   He has expressed racial hatred to staff and
peers.   Considering these instances of verbal expression and phy-
sical confrontations with his roommate, racial prejudice is a
strong possibility for Darren's roommate trouble.

Darren has, also, undergone many new staff changes since his arrival
at Covenant.   During Darren's first six weeks, almost entirely
new staff have been instituted on the Blue Unit in which Darren
resides.   This situation imposes certain degrees of uncomfor-
tability on all children, Darren included.   Darren has expressed
a difficulty in opening up to any staff or child care worker about
any of his problems.   Darren has not bonded to any staff, or
formed any relationships, other than superficial, with staff.

Darren has also gone through several peer departures since he has
resided at Covenant.   What effect this has on Darren is not really
known.   It seems to be hard for Darren to form any positive rela-
tionships with a peer, and with peers leaving Covenant - this may
add to the difficulty for Darren of bonding with a peer.

These three situational changes - roommate problems, new staff and
peers leaving - have placed a burden on Darren, a burden Darren
will have trouble carrying.   At the time of this review, Darren
has been placed in a bedroom by himself.

Behavioral  Observations:

In reference to Darren, several behavioral observations have been
made, which stand out from his entire behavioral schemes.   Darren
has a thought process which is dominated by unrealistic, mythical,
and fantasy expression.   Darren seems to have an obsession with
the supernatural and occult.   He expresses this in his social
interaction with staff and peers.   Stemming, perhaps, from this
unrealism is Darren's acting out behaivor, which is clearly melo-
drmatic acting.   Darren is quite dishonest in his actions and is

106

SHATNER, Darren                                    December 18, 1981
Treatment Review No. 1 (Con't.)

-------------------------------------------------------------------

among people.   He gets a negative contagion started among peers.
Darren is an obvious troublemaker and relates, most often, with
staff in a trouble situation.    Darren is excessively abusive
to staff, mostly in a verbal way, however, there have been phy-
sical situations - especailly with female staff.

Most Significant Issue:

Darren's most significant life issue is that of school.  His be-
havior outside the classroom carries over into the classroom.
Although Darren prefers his room to school, he seems to enjoy dis-
rupting the classroom, setting other peers off.    Darren expresses
a negative attitude of school, poor interest and often is tardy or
doesn't show up for class.    Darren's major problems in the class-
room are talking and making bizarre noises.

A treatment plan for the school issue should involve a system
of no  reward for poor school performance. If he does not bring
his grades up, or do his homework then he does not participate
in sports activity  - which Darren finds enjoyable.    When he re-
fuses to work in school, he can take it with him when kicked out,
as opposed to just being kicked out of school, which he enjoys.
If his work cannot be done in class, he can do it on his free
time in his room.    Darren must know that he cannot escape from
school.   His teachers state that he has the ability to do the
work but not the desire.   Using a peer that has proven to be a
positive influence on Darren may help to open Darren to proper
school behavior.

Social Context:

Darren's social context, like his behavior, is unrealistic, in-
tangible.   Darren's family is in his thoughts but is not a tan-
gible, realistic primary group for him.   His family is on/off/
on, an unstable group.   His family is not a long term obvious
part of his life.   Community interaction is non-existant for
Darren.   Darren goes nowhere alone, never interacting alone
with the community.   When in the community Darren has been
known to sneak off.

STRENGTHS AND WEAKNESSES:

Strengths:

1.  Has good personal hygiene.
2.  Enjoys sports and activities.
3.  Can maintain brief superficial relationships.

SHATNER, Darren                                    December 18, 1981
Treatment Review No. 1 (Con't.)

----------------------------------------------------------------

Darren saw Dr. Oswald on November 30, 1981 for his initial optical.

Dr. Assalley, our Consulting Psychiatrist, saw Darren on October
29, 1981 concerning his complaint of "migraine headaches".  Dr.
Assalley suggested that a record be kept as to the time the head-
aches occur, the position of the headache, the length of the time
the headache lasts and whether or not Tylenol grain 10 or aspirin
grain 10 helps to relieve the discomfort.  Darren has complained
three times of such headaches.  These headaches occurred on:

11-11-81 at 4:45 p.m. in the bilateral temples, two Tylenols were
given that relieved  the discomfort by 9:45 a.m.

11-19-81 at 11:00 p.m. - Darren again complained of migraine again
in the temporal area which again was relieved by two Tylenol.

12-15-81 - again Darren complained of headache at 11:00 a.m. and
again it was located in his temporal area.

Darren complained of an inability to sleep.  Dr. Assalley was
notified and prescribed,on November 19, 1981, Activan 2 mg one
tablet at hour of sleep.  On December 10, 1981, Darren stated
it was difficult for him to wake up in the mornings.  Dr. Assalley
again was again contacted and changed the time for the Activan to
be given from hour of sleep to 5:00 p.m.

Due to no immunization record  accompanying Darren, he will need
to have all his immunizations rescheduled.

Darren has no known allergies.

PSYCHOTHERAPY:

Darren was first seen individually once a week and twice in group
therapy.  Since Thanksgiving, both have been intensified to twice
weekly and every week day respectively.

Although,on intake, his mother agreed to visiting him on a monthly
basis, she has only been down once since placement and that was
unscheduled.   Several other appointments or promises to Darren
were made but broken without motive.   These times, would give
Darren the excuse to act out - usually resulting in his need to
be isolated for a brief time in order to gain his composure.

Darren has successfully completed a five day Thanksgiving home
visit, and he will go home on a twelve day pass at Christmas.
This is one week less than other boys due to the fact that there
would be little supervision at home during the first week of va-
cation.   Mrs. Shatner's only complaint of Darren's Thanksgiving

-7-

SHATNER, Darren                                     December 18, 1981
Treatment Review No. 1 (Con't.)

-----------------------------------------------------------------

Because Darren seems to approach life as if it were one big con
game, he at times forgets himself.  He is just going through a
role and ends up believing the picture of reality he is projecting.
He, then, really gets goofed up.  Fortunately, his eyes and face
give him away...giving lots of clues as to the sincerity at the
moment.

Darren's dramatics are unbelievable.  He can spin a yarn about some
tragedy in his life meriting at least several Academy Awards.  There
is almost a touch of mania to his presentation.  Unfortunately,
Darren's dramatics escalate and he frequently needs to be isolated.
Sometimes, we can bring Darren out of it by treating him neutrally.

Thus, Darren sees himself as the victim....almost like a sacrificial
lamb.  He is at Covenant because of his mother's doing to bid
his time until the divorce goes through.  His attitudes and be-
haviors here are blameless - - it is our inability to understand
him.  If he's not blaming staff, it is the kids who instigate
trouble and pull him in.

At the time of this writing, I honestly do not feel Darren feels
close to any staff persons here.  Despite our efforts, he does not
trust us.  More than any other kid, he is attempting to duplicate
the world he was used to - prior to placment on the unit, especially
relationships with adults.  We are objects to move about until he
hits the right combination to get what he wants.

My prognosis for Darren is guarded.  I doubt he will ever get at
the stuff therapy is made of - until his family entanglements are
resolved.

JT:alr                          Jack Tanton, RSW
                                Therapist

109

# INCIDENT REPORT FORM

### COVENANT CHILDREN'S HOME

## (TO BE SUBMITTED WITHIN 24 HOURS OF INCIDENT TO CHILD CARE SUPERVISOR)

---

### CHECK APPROPRIATE INCIDENT:

| | |
|---|---|
| ☐ RUNAWAY | ☐ ACCIDENTS INVOLVING VEHICLES OR EQUIPMENT |
| ☒ ABUSE OF CHILD OR <u>STAFF</u> | |
| ☐ ACCIDENT CAUSING INJURY | ☐ SEVERE ACTING OUT (BEYOND TREATMENT EXPECTATIONS) |
| ☐ SCHOOL SUSPENSION OR EXPULSION | ☐ OTHER (EXPLAIN) |
| ☐ MAJOR ILLNESS | |

NAME _____ SHATNER, Darren _____ DATE ___ 01/12/1982 _____

1. DESCRIBE IN DETAIL WHAT ACTUALLY HAPPENED. (INDICATE TIME, SPECIFIC PLACE, CAUSES, RESIDENTS AND STAFF INVOLVED).

   TIME: 11:35 A.M. Darren attacked staff with a chair. It happened at the kitchen table. Darren was being confronted by staff (Jack Tanton and Kevin Epley) on a family issue involving some stollen jewelry of Darren's mother. After several minutes of discussion, and finally getting to the bottom of the issue, Darren began acting out. He
   (continued on attached sheet)

2. DESCRIBE WHAT IMMEDIATE ACTION WAS TAKEN BY STAFF MEMBERS PRESENT:

   Jack Tanton immediately seized Darren on the floor, pinned him, and asked another boy to go for help. Kevin Epley immediately cringed under the blow, stepped back and went for Darren. However, Kevin changed his composure and went into the bathroom in extreme pain.
   (continued on attached sheet)

3. DESCRIBE FOLLOW-UP PLAN ESTABLISHED BY STAFF MEMBERS:

   At the time immediately following the incident, and several hours after, Darren had only been confined to C.I.R., the Child Care Worker Supervisor and staff concurred that Darren could be released in time for the Unit Group Meeting and then placed on room restriction with periodic staff checks.

4. COULD THIS SITUATION HAVE BEEN AVOIDED? IF SO, WHAT SUGGESTIONS DO YOU HAVE FOR AVOIDANCE IN THE FUTURE?

   I do not see how such an outburst of irrational, sporadic, unprovoked behavior could have been avoided. Darren is such a volatile youth that simply verbal frustration and over stimulation can cause such vile behavior. Darren could have controlled his behavior but is consistently choosing to overstate his feelings by inappropriate actions

5. STAFF MEMBERS NOTIFIED:

   Steve Stern, Loretta Volker, Danny Williams and Del Ford

REPORTING CHILD CARE WORKER: _Kevin D Epley /Jason____

YOUTH: _____ 110 _____

CHILD CARE SUPERVISOR: _Silvia p. Stern_____

SHATNER, Darren 

1.) was caught in a lie and had his own con games thrown back at him. This caused Darren to display some extreme rage and lashing out at people. He picked up a chair and attacked Jack (staff) first, then swung again at Kevin (staff) as he was coming in to intervene. At this point, Kevin (staff) was struck in the left arm as he blocked the blow from the chair. Darren immediately fell to the ground of his own omission as he often does, in response to his atrocious behavior.

2.) When assistance arrived, Darren was stripped and placed in the Crisis Intervention Room (CIR). Medical attention was immediately sought for Kevin.



# COVENANT CHILDREN'S HOME AND FAMILY SERVICES

502 Elm Place • Princeton, Ill. 61356 • Tel. (815) 875-1129

January 14, 1982

**SERVICES OFFERED**
- RESIDENTIAL TREATMENT
- FOSTER HOME CARE
- MARITAL & FAMILY COUNSELING
- PLANNING WITH UNWED PARENTS
- CONSULTATION

Ms. Marilynn Harmon
Department of Children and Family Services
4320 W. Montrose
Chicago, Illinois   60641

                    Re:  SHATNER, Darren - Incident Report

Dear Ms. Harmon:

Enclosed is a copy of a recent incident involving Darren
and staff members.

Should you have any questions after reviewing the report,
please feel free to contact me.

                         Sincerely yours,

                         Steven D. Stern

SDS:bk                   Steven D. Stern
Encl                     Child Care Supervisor




Copy to:  Karen Brucks
          Juvenile Court

ADMINISTRATOR: Martin L. Pratt, ACSW,
EXECUTIVE COMMITTEE, BOARD OF MANAGERS: William C.
Audrey Hodgkinson, *Vice Secretary*; Edward Blackburn, *Treasurer*.

Kenneth Clausen, *Vice-Chairman*; Harold Hawkinson, *Secretary*;

112



# COVENANT CHILDREN'S HOME AND FAMILY SERVICES

### 502 Elm Place • Princeton, Ill. 61356 • Tel. (815) 875-1129

**SERVICES OFFERED**
- RESIDENTIAL TREATMENT
- FOSTER HOME CARE
- MARITAL & FAMILY COUNSELING
- PLANNING WITH UNWED PARENTS
- CONSULTATION

February 2, 1982

Ms. Marilynn Harmon
Department of Children & Family Services
4320 W. Montrose
Chicago, Illinois 60641

Re: SHATNER, Darren
    Treatment Review No. 1

Dear Ms. Harmon:

Enclosed please find a copy of the recent treatment review done on Darren Shatner on December 18, 1981.

Should you have any concerns or questions regarding this report, please feel free to contact me.

Sincerely yours,

Rick Van Acker
Director of Res'l Services

Jack Tanton, RSW
Therapist

JT:alr
Encl:

ADMINISTRATOR: Martin L. Pratt, ACSW.
EXECUTIVE COMMITTEE, BOARD OF MANAGERS: William C. F... ...enneth Clausen, Vice-Chairman; Harold Hawkinson, Secretary;
Audrey Hodgkinson, Vice Secretary; Edward Blackburn, Treasurer.

...ar

...s Name _Darrin Shatner_

...o. _X 784-80-01_     Birthdate _2-12-67_

...t Dates: _3/5/84 & numerous phone contacts._

**...RAL PARENTS:**

...r _Dorothy Shatner_    Address _1493 Winslow, Palestine_

...r _Donald "_    Address _Unknown_

**...ER PARENTS:**
_Covenant Children's Home_    Address _Princeton, Ill_

...f Placement _10-6-81_    Legal Status _GO_    Date _____

### CURRENT INFORMATION ON:
(Please do not be limited by line space; use back if needed)

...ILD: (adjustment and progress) _Darrin is working on controlling his temper & anger. He still has difficulty (when is parental conflicts), although he can now talk about them. He does not lie but still has_

...OBLEMS (problems) _stealing. He attends school is low average_

...TURAL PARENTS: (involvement-situation) _Mother & father divorced & in constant conflict with Darrin in middle. Darrin refused. to other relatives seem interested. Mo akes promises she can't keep & father doesn_

...ERESTED RELATIVES: _Same_

...ING ARRANGEMENT: _Covenant Children's Home_

...VATE GUARDIAN: _____

...NS AND RECOMMENDATIONS: _Continued placement to help Darrin resolve conflicts surrounding parents & learn acceptable methods of controlling his temper & behavior_

...E _NSO 21338_    CASEWORKER _M Glennon_

114

## TREATMENT REVIEW NO. 2

SHATNER, Darren                                April 6, 1982
Birthdate: 07-12-67
Admission Date: 10-06-81

--------------------------------------------------------------

**PERIOD COVERED:**  12-18-81 to 04-06-82

<u>CHILD CARE WORKER REPORT:</u>

<u>Narrative:</u>

<u>Situational Changes:</u>

The past three months show that Darren has undergone several changes
in child care staff.   Two have remained the same, while the other
two have changed at least  twice.   Also, he has seen two peers leave
Covenant while four new peers have been admitted - three within one
week.   Jack Tanton remains as Darren's therapist.

Also, in this period, Darren has had a room to himself, basically due
to the fact that previously he could not get along with his roommates.

<u>Behavioral Observations:</u>

Darren's behavior has improved dramatically.   He is less pre-occupied
with the super natural and the occult.   He is more realistic.   He
is more honest and sincere in relating to others, although he still
could do much more.

Darren has shown more responsible, mature behavior in the past three
months.   He is less destructive of material possessions.   He no
longer exhibits  paranoia.   He doesn't sleep in his closet or be-
tween the bed and wall now.   He seems to feel safe here and is
much more comfortable with himself.

He has a much more positive attitude.   He readily accepts respon-
sibility and consequences for his less frequent negative behavior.
He can also accept praise for his good behavior without discomfort.

His relationship with his mom has improved as his attitude and be-
havior have improved here at Covenant.

<u>Relationship with Staff and Peers:</u>

Darren's relationship with staff has also improved drastically.
While he still has developed no close ties with any one staff
member, he accepts authority and is much more respectful to both
male and female staff.

In peer relationships, Darren has very little do do with his younger

115

-2-

SHATNER, Darren                                    April 6, 1982
Treatment Review No. 2 (Con't.)

----------------------------------------------------------------

peers.   There are two boys his age that he pals around with, but
this is erratic.   The three of them very seldom get along at the
same time.   He has a tendency to play one against the other.

## Most Significant Issue:

Darren's most significant issue is his inability to develop positive
meaningful relationships.   He is phony and narcissistic.   It is
difficult to trust him on his motives.   It is also difficult for
him to trust anyone else.   Therefore, any relationship he does de-
velop is of a very superficial nature.

## Social Context:

Darren attends on-grounds school.   Bot attendance and behavior have
improved.   He still occasionally has a problem with his antics in
one particular class, but overall has done well this time period.
His grades are average.

During ths past month, Darren has earned his uptown privilege.   He
also attends church on Sunday and goes on outings with the unit and
staff.

## STRENGTHS AND WEAKNESSES:

### STRENGTHS:

1.   Good personal hygiene.
2.   Enjoys sports and activities.
3.   Active participant in group therapy.
4.   Has a fairly good sense of humor.

### WEAKNESSES:

1.   Is not trusting of people, consequently has a difficult time
     developing relationships.
2.   Not able to share feelings openly and honestly.
3.   Unrealistic, especially fantasizing about his family.
4.   Fronting - phony.
5.   Defensive - denies and projects blame on others.

## ISSUES, OBJECTIVES AND PROCEDURES:

ISSUE I:   Fronting.

116

SHATNER, Darren                                    April 6, 1982
Treatment Review No. 2 (Con't.)

--------------------------------------------------------------

OBJECTIVE:

To assist Darren in learning to be more honest with self and
others.

PROCEDURES:

1. Confront Darren on the spot when he is being dishonest or
   putting on a front.
2. Use peers and utilize group therapy to challenge Darren when
   he is pretending to be what he is not.

ISSUE II:    Peer and Staff Relationships.

OBJECTIVE:

To promote positive interaction with staff and peers.

PROCEDURES:

1. Darren will spend one hour per shift one-on-one with a staff
   member.
2. Use group therapy to facilitate interaction with peers.
3. Encourage Darren to spend at least one hour per shift with a
   peer with whom he normally has little interaction.

MEDICAL:  Barb Smith, R.N., Staff Nurse

Narrative:

Darren's physical condition remains good.  He has few physical
complaints, other than headaches as discussed in his previous treat-
ment review.

The following are the dates and times of these headaches.  Each
time, Darren received two Tylenol for the complaint.

01-17-82 - 11:45 p.m. - temporal area.  Lasted approximately one
           hour after medication was given.
01-28-82 - 11:15 p.m. (Same as above).
02-15-82 - 10:45 a.m. (Same as above).
03-09-82 - 10:45 p.m. (Same as above).
03-14-82 - 10:30 p.m. (Same as above).
03-15-82 - 11:05 a.m. (Same as above).

117

SHATNER, Darren                                    April 6, 1982
Treatment Review No. 2 (Con't.)

-------------------------------------------------------------------

PSYCHOTHERAPY:

Darren has been seen two times per week individually and has been
involved five times per week in unit group therapy.  He is always
prompt and seems to anticipate with a positive attitude his time
with me and the group sessions.  Due to Darren's theft of jewelry
while at home over Christmas, his mother has not been in contact
with him either by phone or in person.  The loss was discovered
in mid-January and all the pieces recovered.  At that point,
Mrs. Shatner didn't want to "see his face again".  However, by
March 5, 1982 when a family conference including the Department
of Children and Family Services, Probation Office and the Cove-
nant Children's Home, she had reversed her stance and was once again
hoping Darren would cut out his nonsense and come home to live with
her or Mark.  These flip-flops are common in her handling of Darren.
Another familiar pattern is to place an inordinate amount of re-
sponsibility on his shoulders:  Darren, hurry up and get better so
(1)  Mark and I can get married, (2) we'll have a family again,
(3) we can buy a house for us all to live in, and (4) Mark's son can
live with us, too.

At this same mid-January date, Mrs. Shatner relented a previous
stance and gave me her ex-mother-in-law's work phone number.  Since
placement, Darren has shown various degrees of concern as to his
father's welfare.  Many times, when all else failed, he used this
lack of contact as an exuse for not taking responsibility for his
behavior.  Darren talked just to his grandmother, and then there were
several phone calls initiated by his father.  He is presently living
with his "old girl friend" and her two young children.  A blood
relative is nearby and is the employer of Darren's father.  His res-
idence remains undisclosed since Mr. Shatner is still party to num-
erous legal suits.  Like his ex-wife, Mr. Shatner made some commit-
ments to Darren (more calls, working out an on-grounds visit, perhaps
eventually living with him), but has failed to follow through.
Darren attempted to contact his father through his grandmother in
mid-March, but there has been no call from his dad, to date.

Darren's position has cleared over the weeks.  He is now better
able to separate out which are his problems from those eminently
from the family system.  He has plainly told his mother to go on
with her plans, but to forget building the structure of these
plans around him coming to live with her.  Unless she "learns to
play different games, you can count me out" of living with her.
Likewise, the sporatically brief contact with his dad put to rest
his fears that some harm had come to him, but also confirmed  that
unless Darren could put into his dad's games, he had better not

118

-5-

SHATNER, Darren                                    April 6, 1982
Treatment Review No. 2 (Con't.)

------------------------------------------------------------------

count on his dad's support either.   Darren has gained a good, re-
alistic picture of his family role, and he is presently convinced
that he does not want to be drawn in by them anymore.   The end
result is a different Darren from the one experienced following
placement.

Now that weather is turning better, it is planned that Darren will
visit his mother every third week.   He will go by bus and return
with his mother, culminating the pass with a family session.   Hope-
fully, Mark will be drawn into these sessions in a meaningful way.

Participation in Therapy:

Darren has increasingly grown in his participation in therapy.
Where at first he needed to be guided and prodded, Darren now comes
with at least one issue he wants to explore.   It took a number of
weeks for him to shift from "thinking PPC".   It was not uncommon
for him to use the PPC approach as a distancing mechanism.   Darren
is now much more congruent, meaning that in the office or in
group, he is much more in touch with the feelings inside himself or
others and they all match up with his total presentation of himself.

Darren is seen as much less manipulative.   He wants to please, and
is identifying more and more with his need to be a psychologically
healthy kid.   This is seen on an everyday basis in his growing ability
to cope with life problems (school, girls, ups and downs of peer
relationships, etc.).   Darren has also improved on his capacity to
build and cement friendships.   This has been difficult as his only
role models have utilized a high degree of manipulation.   Many of
our individual sessions have zeroed on his not wanting to go home
to live with his mother because of the way each of them sets the other
up to gain gratification at the other's expense.   Darren describes
this as "going from one spider's net to another" and "disentangling
a ball of yarn that is all snarled up".   Group sessions have been
productive in pointing out Darren's manipulations and helping him
work out more natural conversations.

Now that Darren is more settled into the program, he has dropped some
of his defenses, and is in a better place to accept criticism of
his behavior/attitude from staff he trusts.   Darren can more easily
take pointers from peers in group, but outside group he has a hard-
er time filtering out what he might interpret as threats or sarcasms.
However, even at these times, if staff intervention is necessary he
can usually be brought down without much effort.   Darren can also
accept the intervention of two of his high school aged peers.   The
three have formed a positively-based mutual admiration society.

119

SHATNER, Darren
Treatment Review No. 2 (Con't.)

April 6, 1982

--------------------------------------------------------------------

Staff has found that Darren can fall easy prey to their mischiefs though, in spite of his best intentions. He is not strong enough to say "no" yet, but at least he is entertaining the various angles to problems he confronts here at Covenant. His repertoire of "off-limit" behaviors, however, has grown. The advent of Spring will test the strengths of these boundaries against his "old nature".

Darren is using individual and group therapies to strengthen his ability to work cooperatively with other peers and adults. The more he has worked at this with strong support from staff the less interested he becomes in whats in it for him. There is indeed a part of Darren that is interested in helping another person. His PPC training laid the foundation, but it took time and an atmosphere less confronting for him to drop his front and medicine side show routine.

Darren still has many rough edges. His self-esteem is still closely tied to the feedback he gets from his parents. Since they seem very caught up in taking care of their own needs first, Darren is set-up for a fall everytime he looks for praise from them. Unless some dramatic changes occur within the system, Darren will always come out on the short end. We have seen evidence that Darren has the potential for positive psychological growth when his sights are not blunted by family expectations. What growth Darren has achieved and internalized we must be cognizant of the observation that these forward steps are still skin-deep. He is still very vulnerable to the manipulations of other peers and adults - "easily led"- and needs further life experience under keen, supportive supervision to broaden and deepen his responses.

Discharge Planning:

Darren's father remains inaccessable due to financial and legal problems. His mother coninues to be solely concerned for her own needs and concerns to keep her relationship with Mark afloat. Darren has a place in her life if he fits himself into her priorities. Deviation signals very strong rejection messages. Since Darren needs much more psychological assistance in learning to cope with life's problems without running or blowing off; in caring for someone besides himself; and in judging a situation as it is rather than how one would like it to be, Covenant staff does not envision discharge planning as a viable topic for this coming review period.

JT:alr

Jack Tanton
Therapist

120

CFS 497
Rev. 7/81

**PART II A**

State of Illinois
Department of Children and Family Services

CHILD PLAN ( / ) _____
and/or
FAMILY PLAN ( / ) _____

Page ___ of ___
of PART II A

**CASE NAMES** Shatnee, Dorothy
Shatnee, Darwin

Date Completed 4/21/82

Case I.D. Number _____

Child Suffix(es) _____

Put only one objective on each page. Use as many Part II pages as necessary.
Complete a family plan for the family. In addition, complete a child plan for each child for whom the
Department is legally responsible. Complete within 30 days of case opening and when
each case review is conducted. Type or print in black ink.

**OBJECTIVE 1:** What change or outcome is expected? Who is to make this change or achieve this outcome? What problems identified in Part I does this objective relate to? 01-B,D Enter Code

What permanency goal does this objective relate to? _____ Enter Code(s)

Darwin will develop better interpersonal relations

Date Established 4/21/82          Planned Month of Achievement 10, 82
                                                           Month    Year

**ND SERVICE RELATED TASKS:** Specify the tasks and the service related tasks which need to be completed to achieve the objective above. List only those tasks which will be performed during this six-month period.

| Task Begun | Date Task Ended | TASK: What is to be done? Who is to do it? What is their role in this case situation? List child and family tasks first. Then list Department service related tasks and provider service related tasks. | Task completed (Yes) (No) | Which children does the task relate to? | Evaluations, comments, and observations about the task. If task discontinued, state why. Date each entry. |
|---|---|---|---|---|---|
| 4/14/82 | | Darwin will participate in individual group/medical therapies at client children home | | Darwin | |
| 4/14/82 | | Darwin will participate in at least 1 sport per season | | | |
| 4/14/82 | | Darwin will participate in at least 1 recreational trip in summer of 82 | | | |

Original — Foster Parents (Child Plan)
Copy — To Child Over 13 and as appropriate (Child Plan)
Original — Parents (Family Plan)
Copy — Permanency Advocate (if subject to administrative review)
Copy — Substitute Care Provider Agency

121

2 of 8 Ver.
Rev. 7/81

**PART II A**

State of Illinois
Department of Children and Family Services

CHILD PLAN (✓) ____
and/or
FAMILY PLAN (✓) ____

Page ____ of
of PART II A     4/21/87

CASE NAMES: Shatner, Dorothy
Shatner, Darrin

Case I.D. Number ____     Date Completed ____

Child Suffix(es) ____

---

Put only one objective on each page. Use as many Part II pages as necessary.
Complete a family plan for the family. In addition, complete a child plan for each child for whom the Department is legally responsible. Complete within 30 days of case opening and when each case review is conducted. Type or print in black ink.

---

**OBJECTIVE 02:** What change or outcome is expected? Who is to make this change or achieve this outcome? What problems identified in Part I does this objective relate to? Entry Code 022   Enter Code(s) 212

What permanency goal does this objective relate to?

Darrin will continue to attend PPA on grounds/school at Covenant

Children's Home

Date Established 4/21/87     Planned Month of Achievement 10 /87
                                                          Month  Year

---

**ID SERVICE RELATED TASKS:** Specify the tasks and the service related tasks which need to be completed to achieve the objective above. List only those tasks which will be performed during this six-month period.

122

| Began / Ended | TASK: What is to be done? Who is to do it? What is their role in this case situation? List child and family tasks first. Then list Department service and provider service related tasks. | Task completed (Yes) (No) | Which children does the task relate to? | Evaluations, comments, and observations about the task. If task discontinued, state why. Date each entry. |
|---|---|---|---|---|
| 2/87 | Darrin will participate in required class activities appropriate including home placements | | Darrin | |
| 2/87 | Covenant will supervise Darrin's use of attendance full time | | → | |
| 2/87 | Covenant will coordinate Darrin's current placement arrangements with grandparent involvement. | | | |

---

☐☐☐☐☐ Original – Foster Parents (Child Plan)
☐☐☐☐☐ Copy – To Child Over 13 and as appropriate (Child Plan)
☐☐☐☐☐ Original – Parents (Family Plan)
☐☐☐☐☐ Copy – Permanency Advocate III subject to administrative review)
☐☐☐☐☐ Copy – Substitute Care Provider Agency
☐☐☐☐☐ Copy – Other (specify)

CFS 497
Rev. 7/81

PART II A

CASE NAMES

Shatner, Dorothy
Shatner, Darnin

**State of Illinois**
**Department of Children and Family Services**

CHILD PLAN ( ✓ ) ____
and/or
FAMILY PLAN ( ✓ ) ____

Page ____ of PART II A

Date Completed   4/24/87

Case I.D. Number ____

Child Suffix(es)

Put only one objective on each page. Use as many Part II pages as necessary.
Complete a family plan for the family. In addition, complete a child plan for each child for whom the
Department is legally responsible. Complete within 30 days of case opening and when
each case review is conducted. Type or print in black ink.

OBJECTIVE 03 :  What change or outcome is expected? Who is to make this change or achieve this outcome? What problems identified in Part I does this objective relate to? 02-05-00-13

What permanency goal does this objective relate to? [012] Enter Code     Enter Oʀ

Darnin to take responsibility for his temper at present and abroad.

jective Established   4/24/87

Planned Month of Achievement   10 / 87
Month   Year

| AND SERVICE RELATED TASKS: | | TASK: What is to be done? Who is to do it? What is their role in this case situation? List child and family tasks first. Then list Department service related tasks and provider service related tasks. | Task completed (Yes) (No) | Which children does the task relate to? | Evaluations, comments, and observations about the task. If task discontinued, state why. Date each entry. |
|---|---|---|---|---|---|
| **Begun** | **Date Task Ended** | | | | |
| 4/24/87 | | Darnin to Melinda structured environment to help Darnin realize problems realistically | | Darnin | |
| 4/24/87 | | Darnin to respect others then respect to unattainable to himself and important others. | | | |
| 4/24/87 | | Darnin to find more appropriate means of expressing anger towards family matters. | | | |

123

Original — Foster Parents (Child Plan)
Copy — To Child Over 13 and as appropriate (Child Plan)
Original — Parents (Family Plan)
Copy — Permanency Advocate (if subject to administrative review)
Copy — Substitute Care Provider Agency
Copy — Other (specify)
Copy — File

CF8 497
Rev. 7/81

PART II A (continued)

CASE NAMES: Shatzer, Dorothy / Shatzer, Darrell

Case I.D. Number _____    Child Suffix(es) _____

Page ___ of ___
of PART II A

| Date Task Begun | Date Task Ended | TASK: What is to be done? Who is to do it? What is their role in this case situation? List child and family tasks first. Then list Department service related tasks and provider service related tasks. | Task completed (Yes) (No) | Which children does the task relate to? | Evaluations, comments, and observations about the task. If task discontinued, state why. Date each entry. |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## VISITING PLAN

MODIFIED FOR ORIGINAL WAGE #97

124

1. Date of Plan ___4/27/87___

Plans to Visit ___Mother + her boyfriend Mark___

Children to be Visited ___Darrell___

When ___Every 3rd week Sunday 3:00-4:00 PM___
(Beginning Time, Day, and Dates — Ending Time, Day and Dates)

Where Held ___Paternal Children's Home___

Client Responsibilities for Visits ___Darrell, Dorothy___

Department Responsibilities for Visits ___none___

Purchase of Service Responsibilities for Visits ___Authorism Moral therapy for monitored appropriate___

2. Date of Plan _____

Who Plans to Visit _____

Children to be Visited _____

When _____
(Beginning Time, Day, and Dates — Ending Time, Day and Dates)

Where Held _____

Client Responsibilities for Visits _____

Department Responsibilities for Visits _____

Purchase of Service Responsibilities for Visits _____

CFS 497
Rev. 7/81

PART I

**State of Illinois**
**Department of Children and Family Services**

## REASONS SERVICES NEEDED

CASE NAMES _Children Murphy_
" _Dawn_
" _Dawn_

Case I.D. Number _X784-00-01_

Complete within 30 days of case opening as part of the first service plan and at each case review

Type or print in black ink.

### CHILDREN LIVING IN HOME OR PLACEMENT (List children [siblings] receiving DCFS services)

| 1. CASE ID-last 2 digits | 2. CHILD'S NAME | 3. BIRTHDATE | 4. *Child's Permanency Goal ( ✓ ) 01 02 03 04 05 06 07 | 5. Date of Planned Achievement | 6. Living Arrangement Type | 7. Worker Name | 8. Region/ Field |
|---|---|---|---|---|---|---|---|
| 01 | Dawn | 1-12-67 | ✓ | | 1AA | Herman D828 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

01 Remain at Home 03 Adoption 05 Family Placement: Relatives 07 Long Term Care
02 Returning Home 04 Family Placement: Foster Parents 06 Independence

### REASON FOR SERVICES

to why the case was opened or is continued open. Does the parent or caretaker fail below the minimum parenting standards? If so, which standards does the parent or caretaker fail to meet? Is the parent's or child's conduct or condition likely to result in harm to the child if services are not provided? Specify what harms. Explain how services will alleviate these harms and ensure the child's safety.

**CHILDREN IN PLACEMENT:** For each child who is currently placed, document the continued need for placement out of the home. If the child was placed on more placed from one placement to another in the last six months, document that the child is placed in the least restrictive setting which approximates a family, within reasonable proximity to their home, and with a family of the same race who has a religious, ethnic, and cultural background similar to the biological family. If the child was not placed with a relative and a willing relative was available, explain why the relative placement, was excluded. For Indian children, document that the child was placed in accordance with *art 307, Indian Child Welfare Services.

_Dawn was refused to juvenile court, no Delinquent Petition, He no_
_offered to this court. Any program w/1978 teenage parole "community_
_board program through this. He wa placed w/Heartland Youth_
_on 1980 DCFS recom guid finally on 5-14-80 depending on they placed_
_at critic this residential program on 1-29-80 with) wondered until_
_December 3-2-81 returning to his mother. His returned determined will_

☐ Original — Parents and/or Children
☐ Copy — Permanency Advocate (if subject to administrative review)
☐ Copy — Substitute Care Provider Agency
☐ Copy — File

_MSD_  Worker's Initials    _5-2-81_ Date    Supervisor's Initials

125

CFS 497
Rev. 7/81

**PART I (continued)**

CASE NAMES ___Whitmire, Dorothy___

" ___Ann___

" ___Denise___

Case I.D. Number ___X784-60-01___

_[handwritten narrative, rotated, partially legible]_

at large, this mother is in the process of being evaluated which will strengthen for her & Denise was expressed about before she would be going. She continued to be involved in community based programs to 10-6-81 was agreed upon in developing a plan through the courts of Children. Services have been being she remains there are no relatives available to provide a consistent setting all their lives. Mother has received a sill from of parent involvement of parent development. Parent has been working with mother regarding testing plans.

Worker's Initials ___M.M.___   Date ___1-2-82___   Supervisor's Initials _____

## PROBLEMS

Enter "P" by parental or family problems which are likely to result in harm to the child
If services are not provided. Enter "C" by those child problems which resulted in
placement or Department services. Occasionally parents and children may have the same problem.

| | | | |
|---|---|---|---|
| 01 | Abandonment/Desertion | 13 | Lack of Behavior Control [C] |
| 02 | Aggression/Assaultive Behavior [C] | 14 | Physical Abuse |
| 03 | Alcohol/Drug Abuse | 15 | Physical Neglect |
| 04 | Caretaker's Rejection of Child | 16 | Problem Pregnancy |
| 05 | Catastrophic Occurrence | 17 | Problems with Physical Home Environment [C] |
| 06 | Diagnosed Mental Retardation | 18 | Property Offenses |
| 07 | Diagnosed Physical Illness or Handicap | 19 | Runaway [C] |
| 08 | Diagnosed Psychiatric Disorder [P] | 20 | School Problems [C] |
| 09 | Financial Problems [P] | 21 | Self Destructive Behavior |
| 10 | Home Management Problems [P] | 22 | Sexual Abuse |
| 11 | Inappropriate Sexual Behavior | 23 | Status Offenses |
| 12 | Lack of Adequate Supervision [P] | 24 | Withdrawal (Emotional) |
| | | 25 | Other _____ |

126

CFS 497
Rev. 7/81

**State of Illinois**
**Department of Children and Family Services**

**PART I**

**REASONS SERVICES NEEDED**

CASE NAMES

SHATNER Dorothy
Shatner, Darwin

Case I.D. Number

Complete within 30 days of case opening as part of the first service plan and at each case review.

Type or print in black ink.

**CHILDREN LIVING IN HOME OR PLACEMENT** (List children [siblings] receiving DCFS services)

| 1. CASE ID-last 2 digits | 2. CHILD'S NAME | 3. BIRTHDATE | 4. *Child's Permanency Goal ( ✓ ) | | | | | | | 5. Date of Planned Achievement | 6. Living Arrangement Type | 7. Worker Name | 8. Region Field |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 01 | 02 | 03 | 04 | 05 | 06 | 07 | | | | |
| | Shatner, Darwin | 7/12/67 | | ✓ | | | | | | 6/83 | LPA | M. Harvey | 33 |

* 01 Remain at Home   03 Adoption   05 Family Placement: Relatives   07 Long Term Care
  02 Returning Home   04 Family Placement: Foster Parents   06 Independence

**REASON FOR SERVICES**

**ALL CASES:**
State why the case was opened or is continued open. Does the parent or caretaker fail below the minimum parenting standards? If so, which standards does the parent or caretaker fail to meet? Is the parent's or child's conduct or condition likely to result in harm to the child if services are not provided? Specify what harms. Explain how services will alleviate these harms and ensure the child's safety.

**CHILDREN IN PLACEMENT:** For each child who is currently placed, document the continued need for placement out of the home. If the child was placed or moved from one placement to another in the last six months, document that the child is placed in the least restrictive setting which approximates a family, within reasonable proximity to their home, and with a family of the same race who has a religious, ethnic, and cultural background similar to the biological family. If the child was not placed with a relative and a willing relative was available, explain why the relative placement was excluded. For Indian children, document that the child was placed in accordance with Part 307, Indian Child Welfare Services.

Case was opened because child was not controlable by mother. Darwin was getting into difficulty in community. Parents in the midst of a divorce and mother can provide necessary control thus necessitating placement in an individualized, privately structured treatment center. Involvement will assist parents in maple & parents/parents in dealing & not temper and handling & Adult authority.

☐ Original – Parents and/or Children
☐ Copy – Permanency Advocate (if subject to administrative review)
☐ Copy – Substitute Care Provider Agency
☐ Copy – File

Worker's Initials _____  Date _____   Supervisor's Initials _____

127

FS (rev. 7/81)

**ART I (continued)**

ASE NAMES: _Shatraw, Dorothy_
_Shatraw, Danny_

Case I.D. Number

Worker's Initials / Date / Supervisor's Initials

## PROBLEMS

Enter "P" by parental or family problems which are likely to result in harm to the child if services are not provided. Enter "C" by those child problems which resulted in placement or Department services. Occasionally parents and children may have the same problem.

01 Abandonment/Desertion
02 Aggression/Assaultive Behavior
03 Alcohol/Drug Abuse
04 Caretaker's Rejection of Child
05 Catastrophic Occurrence
06 Diagnosed Mental Retardation
07 Diagnosed Physical Illness or Handicap
08 Diagnosed Psychiatric Disorder
09 Financial Problems
10 Home Management Problems
11 Inappropriate Sexual Behavior
12 Lack of Adequate Supervision
13 Lack of Behavior Control
14 Physical Abuse
15 Physical Neglect
16 Problem Pregnancy
17 Problems with Physical Home Environment
18 Property Offenses
19 Runaway
20 School Problems
21 Self Destructive Behavior
22 Sexual Abuse
23 Status Offenses
24 Withdrawal (Emotional)
25 Oth...

128

CFS 497
Rev. 7/81

State of Illinois
Department of Children and Family Services

**PART IV**                                        REPORT OF CHILD'S PROGRESS

CASE NAMES (Family) _Shatner Dwelling_

(Child) _Darrin Shatner_                                    Case I.D. Number                    Child
                                                                                                Suffi

> For children for whom the Department is legally responsible,
> complete within 30 days of case opening as part of the first service plan
> and at each case review. For other children, completion is optional.
> Type or print in black ink.

Date of Report _4/11/82_

**SCHOLASTIC SUMMARY**

Name of School _Convent Childrens Home_

Grade in School _Freshman_

Program Type _On-grounds spec. ed., B.D._

Adjustment and Progress

_great improvement since placement Overall C average, peaked in English > B/ Still will get into others distracting behaviors but usually sticks to tasks. Endlessly jam on sentences Makes it difficult for teacher to design written wo_

**MEDICAL SUMMARY**

Overall Health _good_                         Date of Last Examination _2/17/82_

Does the child have any handicaps or chronic illnesses? What is the course of treatment for this handicap or illness? Is it being follow

_none_

If the child has had a hospitalization, surgery, or significant illness within the past six months, provide details.

_none_

**EVALUATION OF CHILD'S ADJUSTMENT**

Evaluate the child's adjustment to current living arrangement. Include examples of the child's behavior which support your evaluation

_Darrin has improved in hygiene and room upkeep. While he associates mainly with older boys he will spend time playing table games with the younger. Darrin has internalized many values and is less a con man. He will defend others. He can set a good example to other peers and assume a leader ship role. Has much to go in relationship to family_

_____                    _Convent Anthony Home_
Worker's Signature                                Agency

☐ Original to Permanency Advocate (if subject to administrative review)
☐ Copy to Substitute Care Provider Agency
☐ Copy – Other (specify) _____
☐ Copy – Files

TREATMENT REVIEW NO. 3

SHATNER, Darren                          June 22, 1982
Birthdate: 07-12-67
Date of Admission: 10-06-81

-----------------------------------------------------------------

PERIOD COVERED:  04-06-82 to 06-22-82

CHILD CARE WORKER REPORT:

Narrative:

Situational Changes:

In the past three months at Covenant, Darren has seen an erratic
change in staff.   Two staff members remain the same while one
new member has been added and there have been constant changes
in the fourth member of the team.   Darren has also had to make
other adjustments  in that one of his closest friends was dis-
charged at the end of the school term.   In addition, a new boy
was admitted and became Darren's roommate after having never suc-
cessfully shared this space with anyone else before.   Jack Tan-
ton remains as Darren's therapist.

Behavioral Observations:

While Darren has not reverted back to some of his earlier nega-
tive behaviors, he has slipped into other poor behavior patterns.
He is being easily mislead by peers his own age and exhibiting
a great deal of negative behaviors with them.   Part of this may
be due to the fact that the oldest leader on the unit was dis-
charged at the end of the school year and Darren now is vying
for the position of unit leader.

Darren is moody, although these moods change easily and he is
easily calmed down.   He can be seen taking a very bossy, bullying
attitude with his younger peers.

Darren has been confused about his relationship with his mother
particularly, and has been much more verbally abusive with female
staff than ever before.   He is pre-occupied with fantasizing
about living with his dad who has appeared recently.

Darren has also been testing his limits to extremes.   He has
run away, even though they may have been short runs, several
times in this period.   He has taken every opportunity seen to
act deviously; lying, stealing and cheating at games, anything
to "pull one over" on someone and test.   Eventually the truth
comes out of him, but he seems to enjoy the "con" games and
entertaining his peers with his feats.

130

-3-

SHATNER, Darren                           June 22, 1982
Treatment Review No. 3 (Con't.)

-------------------------------------------------------------

WEAKNESSES:

1.  Not trusting of people, consequently has a difficult time
    developing relationships.
2.  Not able to share feelings openly and honestly.
3.  Unrealistic, especially fantasizing about his family.
4.  Fronting - phony - "has to have an angle".
5.  Defensive - denies and projects blame on others.

ISSUES, OBJECTIVES AND PROCEDURES:

ISSUE I:  Family.

   OBJECTIVE:

   To assist Darren in accepting the reality of his family situation.

   PROCEDURES:

   1.  Promote family contact to enable Darren to see the situation
       realistically.
   2.  Initiate one-to-one conversation with Darren regarding his
       family and confront him when he fantasizes about them.
   3.  Staff will anticipate problems with Darren prior to and
       following home visits and develop a plan to effectively deal
       with them, making him see the real issue.

ISSUE II:  Darren's general dishonesty;  lying, stealing and cheat-
           ing.

   OBJECTIVE:

   To assist Darren in seeing the reality of the outcome of such
   negative behaviors.

   PROCEDURES:

   1.  Use positive peer pressure and utilize group therapy to
       challenge Darren on this issue, when behavior is such.
   2.  Staff will confront Darren and carry out consistently
       such consequences as appropriate for this behavior.

ISSUE III:  Staff and Peer Relationships.

   OBJECTIVE:

   To promote positive interaction with staff and peers.

131

-5-

SHATNER, Darren                                June 22, 1982
Treatment Review No. 3 (Con't.)

------------------------------------------------------------------

While Darren was at Dr. Davis's on May 28, 1982, he asked Dr.
Davis to examine his back.   Dr. Davis suspected possible scol-
iosis and ordered two x-rays of the back, separate views and
Williams Exercise.   On June 3, 1982, it was decided that Darren's
back is thought to be the result of poor posture rather than
scoliosis.   However, it will be rechecked at the next examin-
ation.

On May 18, 1982, Darren had a lead pencil lead in his back -
right anterior pectoris.   Area around puncture was not red or
swollen.   By May 20th, there was no evidence of lead.

On May 17, 1982, Darren's immunizations were updated with a
Diptheria-Tetanus, Oral Polio.

Darren saw Dr. Suarez, Optometrist, on May 21, 1982.   Darren's
visual acuity remains the same with small amount of astigmatism.
Right acuity 20/25 and left acuity 20/20.   No glasses were in-
dicated, at this time.

PSYCHOTHERAPY:

Narrative:

Impact and Ramifications of Family Contact with Darren:

This period is noteworthy for the interplay both parents have had
in Darren's life.   Where once the father was behind the scenes,
Mrs. Shatner has replaced him, thereby nudging Mr. Shatner into
center stage.

Almost two months to the day, June 4, 1982, a second conference
was convened by me and Marilynn Harmon, DCFS worker, at the North
Area Office to attempt once again to clarify Mrs. Shatner's stance
towards her involvement with Darren, and to reach an agreement on
a workable visiting schedule.   (The previous two agreements having
failed due to Mrs. Shatner's "work schedule", etc.).   For the
record, Mrs. Shatner has visited Darren at Covenant only three
times, two unannounced, and the latter to attend an Awards Banquet
at which time Darren received several certificates of recognition
for last year's sports activities.   On March 5, 1982, it was agreed
that at least once a week Darren would be driven back and a family
conference would be held.   Darren was usually returned by bus,
and the one time I do recall they drove him down, Darren was
dropped off at the door, and they drove off without coming inside.
It is also important to note that Mrs. Shatner's boyfriend has

132

-7-

SHATNER, Darren                                     June 22, 1982
Treatment Review No. 3 (Con't.)

------------------------------------------------------------------

Mrs. Harmon and myself are adopting a wait and see attitude towards
Darren ultimately living with his father.   We will do our best to
facilitate him living with either parent but there are certain
check points (among many) that must be met:

1.  Legal entanglements between parents must be resolved.
2.  Mr. Shatner's personal, financial and legal problems must be
    cleared up.
3.  A social study of each parent and their immediate living situ-
    ation must be completed.
4.  Each parent must be agreeable to support and participate in an
    after care program lasting up to no less than one year.
5.  Finally, a non-interference policy must be agreed upon by both
    parents to prevent Darren from getting back into the middle.
    This ought to be monitored by the agency participating in the
    after care program.

For the record, Darren's gripe against his mother which form the
blinders which prevent viewing his relationship to his father in
a realistic manner are:

1.  She is more interested in her boyfriend, Mark.
2.  She does not talk to Darren very much about important subjects,
    such as discharge plans, when he is at home.
3.  Home visits are boring, as he only tags along with Dottie and
    Mark to parties, where there is reportedly a lot of drinking.
4.  There is nothing to do at home when he is left alone while
    Dottie and Mark work.
5.  He doesn't know anyone in the neighborhood.
6.  The apartment is too small.
7.  Mark doesn't like him.   On his last visit, Darren reports that
    Mark hit him while the latter was drunk - simply for playing
    the car radio too loud.
8.  Darren does not like the pressure Dottie is putting on him.  It
    is as if her whole world is hung on him getting everything to-
    gether before she can plan out her own life.

At this point, Darren's treatment team feels that it is premature
to make any recommendations or judgements regarding the fitness of
any one of Darren's parents.   It  is hoped that by early August,Mrs.
Harmon and I will have had an opportunity to interview Mr. Shatner.
In the meantime, communication must be maintained by the team with
Mrs. Shatner regardless of Darren's mood of the moment.    At the
time of this writing, Mrs. Shatner is allowing Darren to choose to
live with his father . . . "Whatever will make you happy, Darling",
but in the next breath, she mentions the outstanding child support
suit.   Her message is clear, but could change with the wind.
Staff remembers last January when she didn't want to "see his face"

133

## CLOSING SUMMARY

SHATNER, Darren                           August 9, 1982
Birthdate: 07-12-82
Date of Admission: 10-06-82

----------------------------------------------------------------

Darren's treatment program at Covenant was unexpectantly ter-
minated as a result of a planned runaway on Sunday, July 25, 1982.
As far as staff can ascertain, the run was instigated by his fear
of possible outcomes stemming from an appointment with the States
Attorney of Putnam County, Illinois.   Darren, along with three
other residents, had broken into a concession stand at a nearby
lake resort.   They had been apprehended on the scene.   The
conference with the States Attorney was to have set up a schedule
of restitution to the stand proprietors, as well as determine
some community service.

A successful run was aborted when Darren was intercepted at the
Trailway's Bus Station in Chicago by the police.   He was held
in custody until the Department of Children and Family Services
could place him in an emergency shelter facility.   A court
hearing was set for Wednesday, August 4, 1982.   This procedure
was initiated by Ms. Karen Brucks, Probation Officer.   However,
Darren ran again and a warrant was issued for his arrest.   That
same afternoon, I received a call from Mr. Shatner informing me
that Darren had appeared at his door.   Mr. Shatner was given
a basic outline of the week's events and told to contact Ms.
Brucks or Mr. Lahey, NAO, DCFS immediately, which he did.

After several days of negotiations and a court hearing, Darren
was released to the care of his father.   Covenant was told to
discharge Darren effective on August 2, 1982.

Darren's discharge left hanging the disposition of payment of
the fine at Putnam County ($54.00) and $99.00 for breakage on
the unit.   Darren's DCFS worker has been notified of the spe-
cifics and will encourage Mr. Shatner to make good on these debts.
Clothing and other personal belongings were picked up by Darren
and his father when they appeared unannounced at Covenant on
Sunday, August 15. 1982.

Recommendations:

Due to the unfinished nature of Darren's stay at Covenant, the
staff unanimously recommends that he be involved in some form
of individual out-patient counseling.   The father needs to be
involved in some fashion, as well, to heighten his  parenting
skills.   Continued contact on a regular basis is recommended.

JT:alr                                    Jack Tahton
                                          Therapist

135



# Covenant

### Children's Home and Family Services

502 elm place • princeton, Il. 61356 • tel. (815) 875-1129

Martin L. Pratt, ACSW: Administrator

August 11, 1982

Ms. Marilyn Harmon
North Area Office
Department of Children & Family Services
4320 West Montrose Avenue
Chicago, Illinois. 60641

                  Re:  SHATNER, Darren
                         Treatment Review & Closing Summary

Dear Ms. Harmon:

I am sorry our association has ended so abruptly. I hope, in the future, to share another case with you. I have had a confident feeling all along that we were viewing Darren with a "common eye" and our planning reflected that cooperation.

You will receive in this mailing, Darren's most recent review and also his discharge summary. If there is any further information you need from us to complete our chapter in Darren's folder, please let me know.

As you recall, Darren left us with difficulties still standing with the States Attorney of Putnam County. Darren ran away before his conference regarding the outcome of his various thefts at a lake side concession stand. Norman K. Raffety (262 E. Mulberry, Hennepin, Il.) says he could call any of the boys, within a three and one half year period, if their behavior warranted it. Darren needs to make good his portion of the $214.00 restoration to the owner of the stand. Darren also owes Covenant for damages to furniture he intentionally broke. Following is a breakdown of these items. We would appreciate it if you would contact Mr. Shatner and have him forward to us a check (made out to Covenant Childrens Home) as soon as possible. Covenant paid the concessionaire in full and the boys are expected to pay us back through working summer jobs, allowances, etc..

136

-2-

Letter to Ms. Harmon (Con't.)                    August 11, 1982

| | | |
|---|---|---|
| $ | 2.00 | - Broom destroyed. |
| | 100.00 | - Desk chair (thrown against wall) - repaired. |
| | 10.00 | - Hole in wall repaired. |
| | 3.00 | - Hole in ceiling. |
| | 4.60 | - May phone bill. |
| | 8.00 | - June phone bill. |

| | | |
|---|---|---|
| | 127.60 | |
| | 54.00 | - Putnam County restitution. |
| $ | 181.60 | - Total due Covenant. |

Thank you kindly for your help.   Your prompt attention to the above would be appreciated.

                                    Sincerely yours,

                                    Rick Van Acker
                                    Director of Res'l Services

                                    *Jack Tanton*
                                    (R)

JT:alr                              Jack Tanton
Encls:                              Therapist

137

STATE OF CALIFORNIA HIGHWAY PATROL — See reverse for reporting Vehicles/Plates

☐ **STOLEN VEHICLE** ☐ **EMBEZZLED VEHICLE** ☐ **PLATE(S)** **REPORT** — Impounded, Recovered, Stored or Released.

| REPORTING DEPARTMENT | LOCATION CODE | DATE | FILE NUMBER |
|---|---|---|---|
| Los Angeles County Sheriff — Lomita | | 03-11-83 | 683-01682 -1711-095 |

| LOCATION OF OCCURRENCE | WAS NEIGHBORHOOD OR AREA CHECKED FOR THE VEHICLE AND/OR WITNESSES, LEADS, CLUES? IF "YES", EXPLAIN IN REMARKS OR ON SEPARATE SHEET(S). |
|---|---|
| 25625 S. NARBONNE AV, LOMITA | ☐ YES ☒ NO |

| DATE AND TIME OF OCCURRENCE | REPORTED BY | DRIVER'S LICENSE NUMBER AND STATE |
|---|---|---|
| 03-10-83 2000 THRU 03-11-83 0945 | ARCHER, JAY ROBERT (DOB 6-25-59) | C 2509428 CA. |

| REPORTING PERSON'S NAME AND ADDRESS | TELEPHONE NUMBER |
|---|---|
| ARCHER, JAY ROBERT 25625 S. NARBONNE AV. #25 LOMITA 90717 | 5341755 |

| BUSINESS ADDRESS | TELEPHONE NUMBER |
|---|---|
| 1276 SARTORI AV. TORRANCE, CA. 90501 | 320 5102 |

## DESCRIPTION AND OWNERSHIP

| YEAR | MAKE | MODEL | BODY TYPE | COLOR (combination) | LICENSE NUMBER(S) | | MONTH/YEAR | STATE |
|---|---|---|---|---|---|---|---|---|
| 8 | HONDA | KNIGHT | MOTORCYCLE | BLK | 2N 5083 | ☒ ONE ☐ TWO | JAN | CA. |

| VEHICLE IDENTIFICATION NUMBER (VIN) | ENGINE NUMBER (EN) | TRANS. TYPE | OWNER'S VALUATION |
|---|---|---|---|
| CB750K2814607 | CB750E3014587 | STOCK | $ 2000.00 |

TRIM, TIRES, MARKS, DAMAGE, INTERIOR (describe color(s), if customized, etc.) CONTINUE IN REMARKS AS NECESSARY
ORANGE & GOLD STRIPES ON GAS TANK

| REGISTERED OWNER | ADDRESS | TELEPHONE(s) (home and business) |
|---|---|---|
| ARCHER, JAY R. | 684 FRASER AV. LOS ANGELES 90022 | 5341755 / 320 5102 |

| LEGAL OWNER | ADDRESS | TELEPHONE(s) (home and business) |
|---|---|---|
| SOLE | | |

| DRIVER OF VEHICLE | TIME AND DATE | ADDRESS | TELEPHONE(s) (home and business) |
|---|---|---|---|
| S/O | 2000 3-11-83 | | |

| POLICE AGENCY (if applicable) | | ADDRESS | TELEPHONE |
|---|---|---|---|
| NONE | | | |

## CONDITION AND INVENTORY (Use Remarks space or attach separate descriptions as needed.)

| ITEMS | YES | NO | ITEMS | YES | NO | ITEMS (*describe fully) | YES | NO | OTHER ITEMS |
|---|---|---|---|---|---|---|---|---|---|
| KEYS IN IGNITION? | | | RADIO (am/fm) | | | CAMPER* | | | |
| DOORS LOCKED? | N/A | | TAPE DECK | | | CARGO* | | | |
| TRUNK LOCKED? | | | OTHER RADIO(s)* | | | VESSEL AS LOAD* | | | |
| ITEMS IN VEHICLE? | | | SPECIAL WHEELS* | | | FIREARMS* | | | |

## SUSPECTS

| | | | | | | ADDRESS | | |
|---|---|---|---|---|---|---|---|---|
| NAME | SEX | AGE/BIRTHDATE | HEIGHT | WEIGHT | HAIR | EYES | DRIVER'S LICENSE NUMBER | CII NUMBER |
| | | | | | | ADDRESS | | |
| NAME | SEX | AGE/BIRTHDATE | HEIGHT | WEIGHT | HAIR | EYES | DRIVER'S LICENSE NUMBER | CII NUMBER |

## REMARKS (Use additional blank sheets as required. Include all pertinent information.)

victim stated that between the indicated times, person(s) unknown took (this vehicle) (~~the~~ ~~even~~ ~~year~~ both ~~plates~~) while parked at the location.

See SH-R-49 yes ____ no X

STS/SVS shows NO WANTS at 0945 hrs.
D info from PINK SLIP Entered in SVS by Secty DRISCOLL ☐ CONTINUED ON SEPARATE SHEET

| NAME OF OFFICER/EMPLOYEE ACCEPTING REPORT | AFFIRMATION: I, the undersigned, do hereby affirm to the best of my knowledge that the information on this form is true and accurate. |
|---|---|
| S. Morphew | |
| DS. | I.D. NO. 064358 | SIGNATURE OF PERSON MAKING REPORT X Herbert Archer |

## FOR OFFICE USE ONLY

| ELEMENT WARRANT ISSUED? IF YES, WARRANT NUMBER | | RING |
|---|---|---|
| ☐ No | 138 | |
| MADE IN SVS | TIME/DATE | PERSON MAKING ENTRY |

V.I.N. CB750K2814607

**Burbank Police Department**
## JUVENILE INVESTIGATION REPORT

DR# 83-77-2654

| Name, Last, first, middle | | | Address: Street. | City. | State. | Zip | Phone |
|---|---|---|---|---|---|---|---|
| SHATNER DARRIN WAYNE | | | (TRANSIENT | CHICAGO TO BURBANK) | | | |

| AKA | Sex | Race | DOB | Age | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|
| "JOKER" | M | W | 7-12-67 | 15 | 6-0 | 175 | BLN | BLU |

Marks, scars, tatoos, etc.
TT: SKULL RT ARM, CROSS LT ARM

Photo & I/P obtained: Yes ☐ No ☒
Gang affiliation? 

| School last attended | Grade | Presently enrolled | |
|---|---|---|---|
| PROSSER H.S. CHICAGO, ILL. | 10TH | Yes ☐ No ☒ | NONE |

| Parents/Guardians | Relationship | Address and Phone (If other than juv's) | Bus. Phone |
|---|---|---|---|
| NOUSOME, DOROTHY | MOTHER | 34585 N. HIAWATHA TRAIL 60050 McHENY, ILL (815) 385-6808 | (UNK) |
| SHATNER, DONALD | FATHER | 3705 W. PALMER ST. CHICAGO, ILL (312) 227-7234 | (UNK) |

| Occupation of parents | Live together ☐ | Notif. made to: | By | Date | Time |
|---|---|---|---|---|---|
| Fr. STOCKBROKER Mo. BEAUTICIAN | Sep. ☐ Div. ☒ | DUMKE GERTRUDE (FRIEND OF MOTHER) | | 3/18/83 | 1838 |

| Charge | Date-time occ. | Date-time arrested | Arresting Officers | Bus. Phone | Bus. Phone |
|---|---|---|---|---|---|
| 10851 VC/602 WIC | 3/18/83-1725 | 3/18/83-1725 | BAKER, T. 6388 | | |

| Victim | Address | | |
|---|---|---|---|
| STATE OF CALIFORNIA | | | |

| Location of offense | Location of arrest | Juvenile released or detained at: |
|---|---|---|
| CYPRESS/THIRD | CYPRESS/THIRD | SYLMAR JUV. HALL |

| Lost property, if detained | Companions' names | Dispositions |
|---|---|---|
| | | NONE |

(SEE CHP 180 FOR RECOVERY NARRATIVE - SAME DR#)

| List other DR's, Evid. Lig. no's. | Reporting Officers | Date | Time | Approved by |
|---|---|---|---|---|
| | BAKER, T. 6388 | 3/18/83 - | 2200 | Sgt Baxum |

| CR & ORI(S) final charge(s) | Code sections | Disposition |
|---|---|---|
| AUTO THEFT | 139 10851 V.C. | D |

**Burbank Police Department**
JUVENILE INVESTIGATION REPORT
DETAINED PETITION

L.A.S.O. LOMITA STN. D.
83-0168 211711-095

DR# 83-77-2654

| Name: Last, first, middle | | Address: Street, | | City, | | State, | | Zip | Phone |
|---|---|---|---|---|---|---|---|---|---|
| SHATNER, DARRIN WAYNE | | | (TRANSIENT | | CHICAGO TO BURBANK) | | | | |

| AKA | Sex | Race | DOB | Age | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|---|---|
| "JOKER" | M | W | 7-12-67 | 15 | 6-0 | 175 | BLN | BLU |

| Marks, scars, tatoos, etc. | Photo & F/P obtained Yes ☐ No ☒ |
|---|---|
| TT: SKULL RT ARM, CROSS LT ARM | |

| School last attended | Grade | Presently enrolled | Gang affiliation? |
|---|---|---|---|
| PROSSER H.S. CHICAGO, ILL | 10TH | Yes ☐ No ☒ | NONE |

| Parents/Guardians | Relationship | Address and Phone (if other than juv's) | Bus. Phone |
|---|---|---|---|
| NEWSOME, DOROTHY | MOTHER | 34555 N. HIAWATHA TRAIL 60050 McHENRY, ILL (815) 385-6808 | (UNK) |
| SHATNER, DONALD | FATHER | 3705 W. PALMER ST. CHICAGO, ILL (312) 227-7034 | (UNK) |

| Occupation of parents | | Live together ☐ Sep. ☐ Div. ☒ | Notif. made to: DUNKE GERTRUDE (FRIEND OF MOTHER) | Date 3/18/83 | Time 1838 |
|---|---|---|---|---|---|
| Fa STOCKBROKER Mo BEAUTICIAN | | | | | |

| Offense | Date-time occ. | Date-time arrested | Arresting Officers |
|---|---|---|---|
| 10851 VC / 602 WIC | 3/18/83-1725 | 3/18/83-1725 | BAKER, T. 6388 |

| Victim | | Address | | Res. Phone | Bus. Phone |
|---|---|---|---|---|---|
| STATE OF CALIFORNIA | | | | | |

| Location of offense | | Location of arrest | Juvenile referred to: or detained at: | Disposition |
|---|---|---|---|---|
| CYPRESS/THIRD | | CYPRESS/THIRD | SYLMAR JUV. HALL | |

| List property, if detained | Companion's names |
|---|---|
| | NONE |

CHARGE: 10851 V.C.

ENCLOSURES: AUTO THEFT REPORT L.A.S.O. LOMITA S.
683-0168 21711-095
RECOVERY & ARREST RPT. BURBANK P.
83-77-2654

PRIORS: NONE LISTED IN J.A.I.

WITNESS: SEE WIT. LIST.

| Last arbor OR's, Evid. tag no's. | 140 | Invest. Officers BAKER, T. 6388 | Date 3/18/83 - | Time 2-00 | Approved by Sgt Brown |
|---|---|---|---|---|---|
| 638 DET. final charge(s) | | Code sections | | Disposition | |

## BURBANK POLICE DEPARTMENT
### W I T N E S S   L I S T

*L.A.S.O. DR. 683-0168 2/1711-6*
*DR 83-77-2654*

NAME _____

RES. & PHONE _____

BUS. & PHONE _____

WILL TESTIFY _____

_____

_____


NAME _____

RES. & PHONE _____

BUS. & PHONE _____

WILL TESTIFY _____

_____

_____


NAME _____

RES. & PHONE _____

BUS. & PHONE _____

WILL TESTIFY _____

_____

_____


NAME _____

RES. & PHONE _____

BUS. & PHONE _____

WILL TESTIFY _____

_____

_____


NAME _____

RES. & PHONE _____

BUS. & PHONE _____

WILL TESTIFY _____

_____

_____


NAME *ARCHER  JAY R.   (VICTIM) 25625 So. NARBONNE AVE. #25 Lomita, Ca*

RES. & PHONE *684 FRASER AVE.  LOS ANGELES, CALIF. 90022  534-1755*

BUS. & PHONE *1276 SARTORI AVE, TORRANCE, CALIF. 90501         320-5102*

WILL TESTIFY *NO ONE HAD PERMISSION TO USE OR TAKE ARCHERS*
*MOTORCYCLE.*

_____


POLICE OFFICERS
(NAME & AGENCY) *OFC. M. NEUFELD # 5148  BURBANK P.D. ⎱ARRESTING*
*OFC. T. BAKER # 6388  BURBANK P.D.          ⎰ OFFICER.*

_____

_____

_____

_____

141

| ☐ IMPOUNDED | ☒ RECOVERED | ☐ STORED | ☐ RELEASED — VEHICLE REPORT | Use reverse for reporting Embezzled/Stolen Vehicles/Pla |
|---|---|---|---|---|

| REPORTING DEPARTMENT | LOCATION CODE | DATE/TIME REPORTED | FILE NUMBER |
|---|---|---|---|
| BURBANK POLICE | B | 3/18/83 - 1705 | 83-77-2654 |

| LOCATION TOWED/RECOVERED FROM | WAS NEIGHBORHOOD/OR AREA CHECKED FOR WITNESSES, LEADS, CLUES? IF "YES", EXPLAIN IN REMARKS OR ON SEPARATE SHEET(S). |
|---|---|
| CYPRESS / THIRD | ☐ YES   ☐ NO |

| TOWING/STORAGE CONCERN NAME AND ADDRESS | | TELEPHONE NUMBER | TOWED TO/STORED AT | | TELEPHONE NUMBER |
|---|---|---|---|---|---|
| G & P | | 843-8000 | G & P | | 843-8000 |
| 421 S. SAN FERNANDO | | | 421 S. SAN FERNANDO | | |

| REPORTED BY | HOME ADDRESS | | TELEPHONE NUMBER |
|---|---|---|---|
| R/O | BUSINESS ADDRESS | | TELEPHONE NUMBER |
| | 272 E. OLIVE | | 847-8731 |

### DESCRIPTION AND OWNERSHIP

LIC. 232830700 1080

| YR. | MAKE | MODEL | BODY TYPE | COLOR (combination) | LICENSE NUMBER(S) | ☒ NONE | MONTH/YEAR | STATE |
|---|---|---|---|---|---|---|---|---|
| 78 | HONDA | 750 | M/C | BLK/BRN | 2N5083  ☐ DMV | | 1/84 | CA |

| VEHICLE IDENTIFICATION NUMBER (VIN) | ENGINE NUMBER (EN) | VIN COMPARE WITH REG. CARD | VIN APPEAR ALTERED/REMOVE? | VIN CLEAR IN SVS | LIC. NUMBER(S) CLEAR IN SVS |
|---|---|---|---|---|---|
| B750K2814607 | | ☐ YES  ☐ NO | ☐ YES  ☐ NO | ☐ YES  ☐ NO | ☐ YES  ☒ NO |

| STOLEN, DATE, AND CASE NUMBER OF REPORTING AGENCY | | WAS VEH. RETURNED TO OWNER | STORAGE AUTHORITY |
|---|---|---|---|
| LOMITA LASO  3/11/83  6#301L&21711-095 | | ☐ YES  ☒ NO | EVIDENCE |

| REGISTERED OWNER | ADDRESS | | TELEPHONE (home and business) |
|---|---|---|---|
| ARCHER, JAY R. | 684 FRAZIER LA. 90022  25625 S. NARBONNE  LOMITA  90717 | | 534-1755 |

| LEGAL OWNER | ADDRESS | | TELEPHONE (home and business) |
|---|---|---|---|
| SAME | SAME BUS. 320-5102 | | SAME |

### CONDITION AND INVENTORY (Use Remarks space or attach separate descriptions as needed.)

| METER READING | DRIVEABLE | HAVE YOU ENTERED MISSING, IDENTIFIABLE PARTS IN SVS? |
|---|---|---|
| 15648 | ☒ YES  ☐ NO  ☐ UNKNOWN | ☐ YES  ☒ NO   *describe fully |

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TIRES | | X | SEAT (front) | X | | REGISTRATION | | X | HUB CAPS (0 ) | | X | TIRES/WHEELS | |
| TIRES | | X | SEAT (rear) | | X | ALT/GENERATOR | X | | SPECIAL WHEELS | | X | LEFT FRONT | FAIR |
| VANDALIZED | | X | RADIO | | X | BATTERY | X | | DRIVING LIGHTS | X | | LEFT REAR | |
| TRANS STRIP | | X | TAPE DECK | | X | DIFFERENTIAL | | | CAMPER* | | X | LEFT REAR | FAIR |
| L. PARTS STRIP | X | | TAPES (0 ) | | X | TRANSMISSION | X | | CARGO* | | X | RIGHT FRONT | |
| R. METAL STRIP | | X | OTHER RADIO | | X | AUTOMATIC ( ) | | | VESSEL AS LOAN* | | X | RIGHT REAR | |
| WINDOWS | | X | IGNITION KEY | | X | MANUAL (X) | | | FIREARM(S)* | | X | SPARE(S) | |

PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS (full names, charges, where detained)

ON 3/18/83-1450 HRS OFC NEUFELD WAS CONTACTED

BY LT DOWNS OF THE GLENDALE (CHP) OFFICE.

LT DOWNS ADV NEUFELD THAT HE HAD RECEIVED

INFO FROM AN ANONYMOUS EMPLOYEE OF CIRCUS VARGAS (GRINNELL)

(THIRD) THAT A SUBJ BY NAME OF SHATNER,  ☒ CONTINUED ON SEPARATE SHEET

| PERSON CHECKING VEHICLE STORED (signature) | I.D. NUMBER | GARAGE OFFICIAL OR AGENT STORING VEH (signature) | DATE AND TIME |
|---|---|---|---|
| ___KER | 6388 | | 3-19-83-1735 |

### VALUATION, RELEASE, DISPOSITION

| PROPERTY TELETYPE (date and number) | REQUIRED NOTICES SENT TO REGISTERED & LEGAL OWNERS (Sec. 22852 VC)? | IF NO IS CHECKED, INDICATE REASON | ☐ AVA PROGRAM |
|---|---|---|---|
| | ☐ YES  ☐ NO | | |

| ASSESSED VALUE | DATE AND TIME OF APPRAISAL | APPRAISING OFFICER'S SIGNATURE | I.D. NUMBER |
|---|---|---|---|
| | | | |

| STORAGE AUTHORITY/CONCERN | | | DATE |
|---|---|---|---|
| | | | |

| RELEASE VEHICLE TO | | |
|---|---|---|

142

| SIGNATURE OF PERSON AUTHORIZING RELEASE | CERTIFICATION: I, the undersigned, do hereby certify that I am legally authorized and entitled to take possession of above described vehicle. |
|---|---|

-2-

BURBANK POLICE REPORT       CONTINUED       DR 83-77-2654

DARRIN (m/w 6-0 175 BLN) HAD IN HIS POSS OR WAS DRIVING A BROWN HONDA 750 m/c WHICH WAS POSSIBLY STOLEN.

AT 1450 HRS OFC BARLOS AND NEUFELD CHECKED THE AREA OF THIRD/CYPRESS FOR THE SUBJ OR m/c w/NEG RESULTS.

AT 1710 HRS OFC NEUFELD (OFF DUTY) WAS N/B THIRD AT CYPRESS AND OBS'D A BRN 750 HONDA m/c DRIVEN BY A m/w BLN.

REALIZING THAT BOTH SUBJ AND VEH MATCHED THE DESCRIPTION GIVEN EARLIER BY LT. DOWNS NEUFELD CALLED BPD.

R/O RESPONDED AND ASKED SUSP IF THE m/c WAS HIS. HE STATED, "YES, I PAID $300 FOR IT."

R/O MADE A RADIO CHECK OF THE PLATE. THE m/c WAS INDEED, STOLEN, LOMITA LASD CASE.

R/O PLACED SUSP UNDER ARREST FOR 10851VC. THE m/c WAS IMPOUNDED G&P.

AT 1745 HRS AS R/O DROVE SUSP TO STATION S STATED, "WHAT COULD I DO? I STOLE THE MOTURCYCLE IN LOMITA. THE LOMITA POLICE WOULDN'T HELP ME. I RAN AWAY FROM CHICAGO A YEAR AGO AND JOINED THE CIRCUS." "I'M FIFTEEN YEARS OLD NOW!"

S WAS JC'D AT BPD JAIL AFTER OFC NEUFELD CONFIRMED S'S AGE BY CALLING CHICAGO (S'S MOTHER)

S WAS MIRANDIZED OF HIS RIGHTS BY OFC. BAKER PER 625/627 WIC 143 PD EOF: B320-33A.

S INTELLIGENTLY WAIVED HIS RIGHT

BURBANK POLICE REPORT CONTINUED  DR  83-77-2654

AT 1840 HRS R/O CALLED INTERCEPT.
SOCIAL WORKER, BRAGG, ART RESPONDED AND INITIATED
AN ENTRY FORM INTO JUVENILE HALL FOR SUSP. (2000 HRS)
AT 2100 HRS S WAS TRANSPORTED TO, AND
ADMITTED AT, SYLMAR JUVENILE HALL.

```
1 01                                    03/19/83   05:32:28
  BUR2     FROM: CLETS

CA0191200.LIC/2N5083.LIS/CA
BOLO MATCH ON LIC/2N5083
OLFN VEH
C/2N5083  76 HOND CYL MC BLK/ORG VIN/CB750K2814807
S/CA LIY/84 LIT/MC ENG/CB750E3014587
I/CA0190017 OCA/830168217 DOT/831143 FCB/232830/001090
C/N3809529X1 RIS/J ARCHER 25625 S  PARKDALE LOMITA 534-1755
T/CALIF-NCIC
PTR CONFIRM WITH CA0190017 LAST LOMITA/213 539-1001
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

```
AGE 02                                  03/19/83  05:32:28
O: BUR2     FROM: CLETS
V

DATE: 03/19/83 TIME: 05:33
XP :01/12/84 LIC#: 2N5083 YRMD:76 MAKE:HONDA BTM :MC
   1B :CB750K2814807
I/O :ARCHER JAY R  694 FRASER AVE CITY:LOS ANGELES C.C.:19 ZIP#:90022
SOLD:01/31/76 RCID:09/01/82 LOCD:3 ENG#:CB750F3014587
YP#:21 VEH #22 BODY:0 CLAS:AR FEE :0036
REC STATUS:
03/11/83 DOJ STOP

END
```

145

```
5.81
MBI2     FROM CLTC              03/19/83   05:37:14

: LOCATE FOR/232030/001090
 /23508J
 /CB7506291440/
 /CB7505291459/
```

146

BURBANK POLICE DEPARTMENT
YOUTH SERVICES BUREAU

*DETAINED*

In the matter of

# SHATNER, DARRIN WAYNE

**Application for Juvenile Court Petition, 653 W.I.C.**

DR **83-77-2654** (Case Number)

A minor _____ *L.A.S.O. DR.683-01682-1 711-095*

Application is hereby made to the:

☒ Probation Officer of the County of Los Angeles

☐ Director of Public Social Services of the County of Los Angeles

under the provisions of Section 653 of the Welfare and Institutions Code to file a petition on behalf of *SHATNER, DARRIN WAYNE*, a minor, who was born on *7-12-67*, to declare the said minor to be a ward or dependent child of the said court.

The undersigned hereby declares that he is currently employed as a peace officer for the *CITY OF BURBANK*.

That pursuant to his employment he has been assigned to investigate incidents that bring the said minor within the provisions of Section *602* of the Welfare and Institutions Code.

That pursuant to this assignment, your declarant has obtained information from those who have knowledge of the said incidents, whose reports and statements are attached here and incorporated by reference. Your declarant has reviewed each of these written reports and statements. They were prepared by persons known to your declarant to be law enforcement officers (and others). These reports and statements consist of ____ pages. These reports and statements contain information from victim(s), witnesses, and others concerning the incidents for which this Petition is being sought. Each of these documents is presently an official record of a law enforcement agency.

State of California, County of Los Angeles:

I, the undersigned say that I am the applicant for a Petition on behalf of the said minor, and this application is true of my own knowledge, except as to the matters that are stated in it on my information and belief, and as to those matters I believe them to be true.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on *3-21-83* in Los Angeles County, California.

*Lawrence L. Hoesch*
Declarant

*JUVENILE BUREAU* *847-869*
Assignment                           Telephone

147

**BURBANK POLICE**
**FOLLOW-UP REPORT**

| CASE CLASSIFICATION | | 1E. DR NUMBER |
|---|---|---|
| 10851 V.C. | | 83-77-2654 |
| 3B. RECLASSIFIED TO | | |

////// VICTIM /////////////////////////////////

NAME AND ADDRESS    *25625 So. NARBOURE AVE #25 LOMITA. CAL. 90717*
Archer, Jay R.  684 Fraser Ave., Los Angeles, Calif. 90022 534-1755/320-5102

| SUSPECT #1 //////////////////////// 6C. IB# J.C. | | 6E. ARREST # J.C. | |
|---|---|---|---|
| NAME AND ADDRESS | | 8D. DRIVER'S LICENSE # | 8E. RESIDENCE PHONE |
| SHATNER, DARRIN WAYNE  Transient | | | |
| 0. BUSINESS NAME AND ADDRESS | | 10D. HOURS OF WORK | 10E. BUSINESS PHONE |
| DOB (OR AGE) 7-12-67 | 12A. SEX - RACE | 12B. HEIGHT | 12C. WEIGHT | 12D. HAIR | 12E. EYES |
| SOCIAL SECURITY NUMBER | | 14B. CLOTHING | | 14D. OTHER FEATURES | |

| SUSPECT #2 //////////////////////// 15C. IB# | | 15E. ARREST # | |
|---|---|---|---|
| NAME AND ADDRESS | | 17D. DRIVER'S LICENSE # | 17E. RESIDENCE PHONE |
| BUSINESS NAME AND ADDRESS | | 19D. HOURS OF WORK | 19E. BUSINESS PHONE |
| DOB (OR AGE) | 21A. SEX - RACE | 21B. HEIGHT | 21C. WEIGHT | 21D. HAIR | 21E. EYES |
| SOCIAL SECURITY NUMBER | | 23B. CLOTHING | | 23D. OTHER FEATURES | |

PERSON INTERVIEWED ////////////////////////////////////////////////////////

| NAME | 26B. ADDRESS | 26D. RESIDENCE PHONE | 26E. BUSINESS PHONE |
|---|---|---|---|

REMARKS ////////////////////////////////////////////////////////////////////

| VICTIM INTERVIEWED | | 29B. SUSPECT OR LEAD | | 29D. NEIGHBORHOOD CHECK | |
|---|---|---|---|---|---|
| YES ☐ | NO ☐ | YES ☐ | NO ☐ | YES ☐ | NO ☐ |

The purpose of this follow-up is to request a Petition be filed on the Minor's behalf.


Ref. L.A.S.D. Lomita Stn. Auto Theft Rpt. #683016821711 - 045


Case cleared by arrest and closed.


Dspo.: D

| ORIGINAL R/O | | 52B. WEAPON-INSTRUMENT USED | | 52D. PROPERTY TAG NUMBERS | |
|---|---|---|---|---|---|
| BAKER, T. #6388 | | | | | |
| ORIGINAL LOSS | 54A. CORRECTED LOSS | 54B. VALUE RE | TYPE OF PROPERTY RECOVERED | | |
| ARREST X | 56A. EXCEPTIONAL | 56B. UNFOUND | OTHERWISE | 56D. SUSPENDED | 56E. CONTINUED |
| REPORT SUBMITTED BY | | 58B. DATE AND TIME | 58C. REPORT APPROVED BY | | 58E. DATE AND TIME |
| ESCHEN, L.L. #4256 | | 03-21-83 1015hrs. | *signature* 0755 | | 3-21-83 120 |

148

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## JUVENILE COURT

| Date | | | | Dept. |
|---|---|---|---|---|
| JUDGE | WILLIAM HOGUE — Judge W/P Tem | Deputy Sheriff | | |
| Referee | C HARRIS | Court Officer | S. CLARK | |
| Deputy Clerk | | Reporter | S. MILLER | |

**IN THE MATTER OF**      **MINUTE ORDER — DISPOSITION (DELINQUENCY)**

```
SHATNER        DARRIN     WAYNE      DOB 07-12-67   PROB# 0731845 CFP FU    TRANSPORTATION
JAIL 00480589  CRT# J118304  PET DATE 03-22-83                              DPO# 733
ALLEGS 10851VC  #487(1)PC.
```

a minor

**PEARANCES:** ☒ Minor   ☐ Father   ☐ Mother   ☐ Guardian   ☒ DDA J. HERNANDEZ
Attorneys ☒ M STONE    CRT

POSITION PROCEEDING RE petition filed **3-22-83** ☒ The Court states it has read and considered the social study filed herein and said report is admitted into evidence by reference.
Stipulation for appointment of Referee / Commissioner as Judge Pro Tem is signed and filed this date.
_____ is sworn to interpret _____

**COURT FINDS:**
Welfare of minor requires that custody be taken from parents or guardians.
The mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority.
Minor is in violation of conditions of probation ordered on_____
Legal residence of minor is in_____ County, California. (Name and address of parents / guardians

Court further orders the Probation Officer to transport the minor to the state
Illinois, Cook County; that the County of Los Angeles bear the cost of food,
**E COURT ORDERS AND ADJUDGES THAT** for said transportation; that the minor be detained in
The entire case, together with all papers contained herein, is transferred to the Juvenile Court of juvenile hall, Cook County, pending further court
County, California. proceedings
County will pay any costs in connection with the placement or transportation of said minor pursuant to Sections 739, and 900-914 **WIC**.
The Probation Officer is authorized to provide medical, surgical, dental or other remedial care.
Minor is ☒ declared ☐ to remain a ward of the court under Section 601 / 602 WIC.
Custody of minor is taken from the parents or guardians and minor is placed in the care, custody, and control of the Probation Officer
for **TRANSPORT TO STATE ILLINOIS COOK COUNTY**
Minor is placed on probation for a period of six months pursuant to Section 725A WIC.
Minor is placed HOME ON PROBATION, in the home of his _____
Minor is ordered SUITABLY PLACED. ☐ Secure County or closed private facility recommended.
Minor is ordered placed in the CAMP COMMUNITY PLACEMENT PROGRAM.
Minor is ordered committed / recommitted / returned to the CALIFORNIA YOUTH AUTHORITY.
The previous order for_____
dated_____ is to remain in full force and effect / terminated.
Offense is declared to be a felony (counts_____), misdemeanor (counts_____
Minor may not be held in physical confinement for a period to exceed **ONE YEAR**
determined as follows (designate charge and term for each count):
Minor is given predisposition credit of_____days, good conduct credit of_____days ; total of_____days credit.
The petition filed_____ is dismissed with / without prejudice per 782 WIC.
Jurisdiction terminated, subject to further proceedings re financial responsibility per WIC 903. ☐ Case dismissed
Minor is ☒ detained / to remain at Juvenile Hall ☐ released to / remain with **PENDING TRANSPORTATION**
TER IS CONTINUED TO:
Appearance calendar of_____, Dept_____, for_____ ☐ Minor waives time.
Nonappearance calendar of **4-21-83**, Dept **270**, for 15 day review. **(15/1)**
Nonappearance calendar of_____, Dept_____, ☐ for report.
The continuance date of_____ ced and vacated. (petition date_____)
All parties present are ordered to return without furthe r subpoena.
Court advises minor and parties of appeal and rehearing **149** eading waived. ☐ Notice served.
NCIAL HEARING — The Court finds that:
_____ has / have the financial ability to reimburse the County for the costs of legal services rendered
**Donald Shatner (father) 3705 W. Palmer, Chicago, Ill.** _____ has / have
(name, address and social security number of payor)
financial ability to pay $_____ for legal services rendered and payment of said amount is ordered. The Department of