IN THE CIRCUIT COURT OF COOK COUNTY

CRIMINAL DIVISION

| | |
|---|---|
| Darrin Shatner, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| -v- ) | Case No.: 91-CR-2026 |
| ) | |
| People of the State of Illinois ) | The Honorable |
| ) | |
| Respondent, ) | Fred Sruia |
| ) | |
| ) | Presiding Judge |

## PETITIONER'S FIRST SUCCESSIVE POST CONVICTION PETITION

Now comes Darrin Shatner, Petitioner by and through himself Pro-Se, in accordance with the Post Conviction Hearing Act, 725 I.L.C.S. 5/122 et. seq., and respectfully requests that this Honorable Court grant his first successive Petition for Post Conviction relief. In support of this Petition Mr. Shatner states as follows:

### INTRODUCTION

1. On May 17, 1993 Darrin, was convicted of murder, arson and armed robbery. Darrin is innocent of these crimes. He was wrongfully convicted due to ineffective assistance of his Trial Counsel. It has just recently come to Darrin's attention that his Trial Counsel had a severe DRUG ADDICTION before, during, and after Darrin's Trial. That during his representation of Darrin, he was seriously impaired due to his drug usage, which has just come to light as a constant daily basis.

2. The crimes for which Darrin, stands convicted occurred in Chicago, Il. on September 1, 1986. This was just fifty-one days after Darrin, turned nineteen years old.

(1)

3. On May 19, 1993, Darrin was sentenced to DEATH and his sentence was commuted to life in January of 2003.

4. Darrin's was assigned to the State Appellate Defender's office for his appeals. This office represented Darrin, through his appellate process in the Illinois Court system.

5. In late 2003, Darrin's family hired Mr. Thomas Peters to represent Darrin for his Post Conviction Petition proceedings. Mr. Thomas Peters also was retained to represent Darrin, in his appeal to the Appellate Court concerning his Post Conviction Petition. Mr. Peters died in July of 2011 before Darrin's Petition for leave to file Appeal to the Illinois Supreme Court was denied. The P.L.A. was denied on September 28, 2011.

6. Now some eighteen plus years after Darrin was sentenced to DEATH and the untimely demise of Darrin's trial Attorney new evidence has come to light. On December 7, 2011, Darrin's family was able to secure a Affidavit that spoke to his Trail Counsel's severe addiction to drug, and how his life came to a tragic end due to that drug use. this Affidavit also spoke to Darrin's Trial Counsel's drug history, his impairment, and his inability to give any type of meaningful legal or any assistance for that matter. The author of the Affidavit firmly believes that Darrin's Trail Counsel was using drug before during and after Darrin's trial. This is something the Author of the Affidavit saw for himself first hand. (Darrin's Trial includes Pre-trial, during Trial, Post Trial, and Sentencing.).

7. Darrin's Trial Counsel was clearly ineffective as well as grossly incompetent. Due to Trial Counsel's severe drug

(2)

addiction at the time of Darrin's Trial, Trial Counsel was willing to do what ever it took to get the trial over with as soon as possible. He proceed to get this done by telling Darrin that he had nothing to fear that he had known the Judge for eighteen plus years and that the Judge was not going to sentence him to DEATH or LIFE. These actions of lying are typical of one who is severely addicted to drugs. The sooner Darrin's Trial Counsel was able to push his case through the system the sooner he would be able to move on to his next unknowing client and retainer. The quickest way to conclude Darrin's case was to deceive Darrin, into believing that his was not in any jeopardy. Darrin's Trial Counsel accomplished this by telling him that he personally knew the Judge and that the Judge was not about to sentence him to DEATH or LIFE. Darrin was not an Attorney, he had no true working knowledge of the legal system this is why he retained Trial Counsel to represent him. Darrin trusted this man with his life, and it turns out not only was the trust sorrowfully misplaced, but life threatening as well. Because of Trial Counsel's deception he was able to convince Darrin, to take the more expedient route through sentencing. This would enable Darrin's Trial Counsel to quickly move on to his next victim. Because that is what Trial Counsel's clients truly were "VICTIMS", Darrin's trial Counsel failed to inform him that just one Jury member could vote to not impose a sentence of DEATH or even to find him eligible for DEATH and Darrin, not only have not been sentenced to DEATH, but would have been a free man today. Had Darrin, not had a Trial Attorney who was severely addicted to drugs, he would be a free man today. Darrin's Trial Counsel was grossly ineffective, and impaired

(3)

during his representation of Darrin, the evidence is now clear that Darrin's Trial Counsel was in no shape to take care of himself let alone represent someone who was on trial for their life.

8. Darrin has recently acquired new evidence that is scientific in nature that was not available at the time of Darrin's trail or sentencing. The science, is a study of the human brain, focusing on the teen age brain and the ages of 17 to 25 years old where people take more risks and do not think about the out come as much as the reward. These new studies prove that people between the ages of 15 and 25 years old exhibit all kinds of risky behavior and take part in far more risky ventures that end more times than not in a ugly outcome. This is exactly the situation here. Darrin, was just fifty-one days into his nineteenth year of life, still a teenager. Within this study 15 to 25 years is a 10 year growth span, the senter age for this span is age 20, Darrin was closer to the age of eighteen, too young to even buy alcohol, but yet was old enough to be sentenced to DEATH of LIFE in prison  The fact that society as a whole recognizes that young people are not responsible enough to be treated as full fledge adults and yet out Justice system will sentence the same teenager to DEATH or LIFE in prison, never even considering that teenagers like Darrin deserve a chance to be rehabilitated , or to grow up, instead Darrin's life and liberty have been taken from him. Now with the discovery of this new scientific evidence, it must be looked into if not only for Darrin's sake but for the sake of our legal system, and justice.

(4)

9. Darrin, was denied effective assistance of Trial Counsel as guaranteed to him by the United States Constitution. Darrin's Due Process rights were violated when the Honorable Judge Mannion heard evidence at Darrin's Motion to Dismiss Statements that Darrin was severely intoxicated at the time of his arrest. Evidence was produced at this hearing that showed Darrin, was under the influence of L.S.D., Alcohol, and Cannabis, at the time of his arrest and interrogation by the F.B.I., had the Honorable Judge Mannion gave full weight to the testimony of witness that had seen Darrin, ingest these substances he would have had no choice but to grant Trial Counsel's Motion and thereby preventing the State from using a illegally obtained statement. Without the use of that illegally obtained statement Darrin's innocence would have been securred, for without that key piece of illegally obtained evidence, there was not enough evidence to over come reasonable doubt and thus Darrin, would have been found innocent. by entering this erroneous ruling Judge Mannion, deprived Darrin of his Due Process rights because had it not been for the erroneous ruling Darrin's trial Counsel would have had the advantage of a much different legal strategy, that of Darrin's innocence. The reason we know this was a erroneous ruling is because in making it Judge Mannion stated that he did not believe that Darrin, was intoxicated as he claimed he was. However just TEN (10) short days later during sentencing Judge Mannion when choosing to sentence Darrin, to DEATH, he stated he found in aggravation that Darrin, was high and messed up on drugs the day he was arrested. Judge Mannion choose to have it both ways. He stated when it was a advantage for the State's Attorney to say that Darrin was not intoxicated at the time of his arrest so they could use his illegally obtained statement and then at sentencing Judge Mannion choose to use that drug use and intoxication as a aggravating factor to sentence Darrin, to DEATH. Where is the JUSTICE in this? This is a clear cut violation of Darrin's right to Due Process. Darrin, concedes that his Trial Counsel should have objected to this at the time it happen and this it is deemed waived by the Court. However with the new evidence that shows Trial Counsel was severely

(5)

impaired, should in the interest of fundamental fairness and justice allow for a exception to the waiver doctrine. Darrin, was at a sever disadvantage because his Trial Counsel was impaired through out this whole process. This is evident because even a first year law student would have raised such a simple objection to a glaring error by the Trial Judge. Not doing so only further proves how greatly Darrin's Trial Counsel was impaired. This is a MOCKERY of JUSTICE and a severe MISCARRIAGE of JUSTICE, and cries out for the Honorable Court to step in and correct this situation, by granting Darrin, a new trial or at the very least a new sentencing hearing.

## PROCEDURAL HISTORY

1. On MAy 17, 1993 Darrin was convicted of murder, arson, and armed robbery by a Jury.

2. On May 19, 1993, Darrin was sentenced to DEATH by the Court, absent Jury, by Judge Mannion, in the Criminal Divison of Cook County, Illinois.

3. On September 19, 1996 the Illinois Supreme Court AFFIRMED Darrin's conviction and sentence.

4. On November 25, 1995 Darrin, filed a Post Conviction Petition.

5. In July of 1996 the State Appellate Defender's office was appointed to Darrin's, case.

6. On October 18, 1996 Private Counsel was given leave to file his appearance, Counsel was paid by the Capital Litigation Division.

(6)

7.  On April 13, 1998 Judge Mannion, dismissed Darrin's Post Conviction Petition.

8.  On May 1998, Judge Mannion, denied Darrin's Motion to Reconsider, on the grounds that he didn't want to hear the Shatner case!

9.  On May 8, 1999, the Illinois Supreme Court vacated the order of the trial Court and remanded Darrin's Post Conviction Petition back to Circuit Court for a hearing to be conducted in compliance with People -v- Bounds, 182 Ill. 2d. 1 (1998).

10. On January 10, 2003, former Governor Ryan commuted Darrin's sentence to natural life.

11. On January 20, 2005, Private Counsel Mr. Thomas Peters, filed a second amended Post Conviction Petition.

12. On July 5, 2006, Judge Suria Jr., dismissed Darrin's Post Conviction Petition, just two days before he retired.

13. On November 30, 2006, Darrin's Counsel filed Notice of Appeal.

14. In December of 2010 the Illinois Appellate Court AFFIRMED Thethe Circuit Courts dismissal of Darrin's Post Conviction Petition.

15. Darrin's Counsel Mr. Thomas Peters, then filed Leave to Appeal to the Illinois Supreme Court.

16. In September of 2011 Darrin, learned that his Mr. Thomas Peters, had died sometime in July of 2011.

17. In late October 2011, Darrin was informed that his Petition for Leave to Appeal to the Illinois Supreme Court was denied on September 28, 2011.

18. Darrin, now comes before this Honorable Court to file his First Successive Post Conviction Petition, in order to comply with Federal Rules regarding all issues must first be presented before the State's Highest Court, which means Darrin, must first present his new Constitutional violation claims before this Honorable Court.

## ARGUMENT

### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Trial Counsel, Michael G. Cheronis, was severely impaired due to his addiction and constant usage of Cocaine, Barbiturates, and Alcohol, while representing Darrin, in the case at bar. Mr. Cheronis' usage was excessive and constant. (See exhibit "A"). Darrin's Father met Mr Cheronis, in a bar. Darrin's father is also a heavy Alcohol user so such a chance meeting was natural. Mr. Cheronis, was retained/hired to represent Darrin, in 1991. Darrin's family paid Mr. Cheronis, $27,500.00 to represent their son in the case at bar. Where this money went has always been some what of a mystery to both Darrin, and his family, but no longer. Darrin, and his family now know that Mr. Cheronis, more likely than not used that money to support his drug addiction. It is clear that the money paid to Mr. Cheronis, did not go to prepare for Darrin's defense or to aid in the mitigation phase of his sentencing hearing. Mr. Cheronis, did

not hire and investigators, or specialists, even though Mr.
Cheronis, was well aware of Darrin's past mental problems.
Darrin's family even had to during trial give more money to
Mr. Cheronis, to find a witness by the name of Tom Moral. Now
given all the new evidence Darrin has it is clear what happen
to all the money his family gave to Mr. Cheronis. Darrin, is
sure that should this Honorable Court grant a hearing where
evidence can be presented and witnesses called the Court will
be convinced that Mr. Chronis, was severely addicted to drugs
during the time span that Darrin, was on trial for his life,
and that through out that time span Mr. Chronis, was impaired
more than he was not impaired. Even the Court transcripts show
that from February 1, 1991, till the beginning of trial Mr.
Chronis, only showed up to about a half dozen of Darrin's Court
dates, even though there were many more than that. There was
always some type of excuse why Mr. Chronis, was not there.
Mr. Chronis, would call in sick, or would just call the State's
Attorney and have the case continued by phone, all this went
on with out Darrin's knowledge, Darrin would only find out what
was going on after he was brought to court. These are the clasic
actions of a severely addicted person, one who is losing control
of everything around them, willing to do what it takes to get
that next fix, some junkies steal, others commit robbery, some
sell their bodies, and in the case of a professional like
Mr. Cheronis, they rob their clients at the expense of their
freedom. The amount of errors in Darrin's trial and at sentencing
are to many to fully place in this Petition, yet they are there
and can be raised if the Court is willing to view them all,
Darrin would be more than willing to raise them all.

(9)

Now let us look at Exhibit "A", and see a first hand account of Mr. Cheronis', history, up till the trial of Darrin, and further on till Mr. Cheronis, took his own life on January 2, 2001, by shooting himself in the head. It is clear the Mr. Cheronis', drug use clearly did not make him a better Attorney but rather severely impaired his ability to provide the services for which he was hired, which in this case was to defend Darrin, to prove his innocence and in essence save Darrin's life. Mr. Cheronis' professional life did not see him start out as a addict, he was at one time a very accomplished Attorney. then he started to experiment with heavy or "HARD DRUGS" in the $1980^s$. Through out this decade it became worse, the drug use was starting to affect his practice. Many Judges had reprimanded him for excessive requests for continuances, and not being prepared for trial. A number of Mr. Cheronis', clients found themselves without representation as he would withdraw from the case if he did not receive more money even though the client had already paid what was agreed to. The grate need for this extra money was Mr. Cheronis' need to buy more drugs. Sadly there is no real way to investigate at this point if it was Mr. Cheronis', clients who may have paid him with drugs were the ones he gave the best defense to. It became clear to those around Mr. Cheronis, that his addiction was becoming worse by the day. He was now spending money given to him by clients on drug, strip bars, and sex clubs. This behavior was witnessed first hand by Mr. Cheronis' brother-in-law, and friend form 1972 till his Mr. Cheronis' death in 2001. This man also witnessed Mr. Cheronis, using drugs on many occasions while the were out together, or in Mr. Cheronis' home,

(10)

or when in his own home. In the early 1990$^S$, when Mr. Cheronis, was hired to defend Darrin, in the case at bar, his behavior was erratic and his drug usage now included barbiturate abuse in addition to the cocaine, and alcohol, his law practice had all but evaporated, he fell into bankruptcy, lost his home and had to move through a series of rental apartments, one would think that the $27,500.00 Darrin's family paid him would have saved the home at least. Sadly we now know the truth and why the money given to him did not go towards saving his home. Mr. Cheronis, was severely addicted to drugs and alcohol, all he cared about was his next fix and how to get it. he was not concerned with who he had to step over or on or who's life he put in jeopardy as long as he was able to get that next fix. The new evidence clearly shows that what happen to Darrin goes way beyond ineffective assistance of Trial Counsel, it was negligent, inadequate, incompetent, and even criminal because Darrin was fighting for his very life, and Mr. Cheronis, failed to not only do his sworn duty but to Protect Darrin. To add to this tragic set of events, there is sure to be other clients of Mr. Cheronis, who were failed by him because of his addiction. Not only did he fail Darrin, and other clients, but he failed his family and himself, and now sadly he is dead way to early in life. His addiction had such a hold on him that he was out of control, if only it was of a time such the one we now live in there would have been measures in place that would could have detected Mr. Cheronis', problem, and Darrin, would have proven his innocence and Mr. Cheronis, would still be alive today. granted hindsight is 20/20 but in this case Darrin implores this Honorable Court to use that 20/20 hindsight and

(11)

him a new trial or at the very least a sentencing hearing in which Darrin, can properly present evidence to show why he should not have received a DEATH sentence, for had his Due Process rights not been violated at that stage Darrin would have not been found eligible to be put to DEATH and thus would have been sentenced to a number of years, and not the life sentence he now sits doing.

2. Darrin received ineffective assistance of Trial Counsel in a clear violation of Darrin's United States Constitutionally protected Due Process Rights. Mr. Cheronis, told Darrin, that he personally knew the Judge and that the Judge would NOT sentence Darrin to DEATH or even LIFE. However it is now known that there was no truth to this fairy tale that Mr. Cheronis, was spinning for Darrin. This is a man Darrin trusted with his life, Mr. Cheronis, clearly was just looking for the fastest way to his next fix. he was not concerned that Darrin, might lose his life, knowing what is now known, and applying hindsight to the record, Mr. Cheronis', actions are now not only explainable but understandable. Darrin, would not be in prison now had Mr. Cheronis, not been a drug addict. Never did Mr. Cheronis, explain to Darrin that it took one one Jury member to fine that Darrin was not eligible for DEATH and that his life would be spared. The reason Mr. Cheronis, did not do this is clear now that we now know the extent of Mr. Cheronis, addiction. See having a Jury decide Darrin's fate would have taken many more days than having a Judge decide. Clearly that next fix was the driving force behind Mr. Cheronis', actions in this case. Darrin almost lost his life, and

(12)

has spent more than two decades in prison for a murder he did not commit. (See exhibit "B").

The strategy that Mr. Cheronis, employed clearly was unsound, and void of protecting Darrin at the sentencing stage which was a very critical part of the whole process. It was Mr. Cheronis', duty to protect Darrin, sadly it was not until recently that we now know why Mr. Cheronis, did not protect Darrin, Mr. Cheronis, was a drug addict, his next fix was all that he had on his mind. The few extra days required for a Jury to decide the sentencing issue were just not acceptable to Mr. Cheronis, he chose to with hold material facts from Darrin he lied to him by saying the Judge was not going to sentence him to DEATH or LIFE, Mr. Cheronis, found the quickest way to dispose of Darrin's case so what if it came at the expense of Darrin's LIFE. What Mr. Cheronis, did was commit attempted murder, (720 I.L.C.S 5/9-1-(a)-2, in that one knows or should ahve known their actions created a strong probability of death) that is what happen here Darrin was sentenced to DEATH because of Mr. Cheronis', actions. The law is clear no proceeding within our justice system can be left to stand if the advocate for the defendant is impaired during the proceedings, this is clearly the case with the case at bar. Fundamental fairness and justice cry out for these issues to be resolved now that the addiction of Mr. Cheroins, has come to light. A new trial is the only way that this tragic wrong can be set right.

# NEWLY DISCOVERED SCIENTIFIC EVIDENCE
# CONCERNING THE DEVELOPMENT OF THE TEENAGE BRAIN

1.  The new studies that are presented here show that darrin, just like almost every other teenager, was still developing at the time this crime was committed. these studies show that as a teenager the brian is still growing new connections and is still developing. teenagers are unable to make proper choices more times than not. their impulses. Then add outside factors like first time I.V. drug use, at the hands of a older woman, and the promise of a sexual encounter and Darrin, had not chance of making proper. moral, right choices. Darrin, was only fifty-one days into his nineteenth years of life when this crime took place, granted he possessed a man's body, however his brain was still developing from childhood to adulthood. Darrin is not attempting to say that he could not be held accountable for this crime because of this study if after a new trial he was found guilty after receiving a fair trial with effective assistance of Counsel. What Darrin, wishes to bring to this Honorable Courts attention is that had this newly discovered evidence been available at the time that darrin was sentenced he believes that enough mitigation would have been found to exist to find Darrin INELIGIBLE for a sentence of DEATH. This newly discovered evidence has just recently been brought to Darrin's attention. These studies were not even complete at the time of Darrin's trial or sentencing. (See exhibit "C"). Darrin seems to be a text book case concerning the results of this study, had this evidence been presented during Darrin's trial and sentencing there can be no doubt that the out come

would have been very different.  We know that the night of this crime that Darrin, was injected for the first time in his life with cocaine, by Jean Rogaz, a woman he had just met and whom was showing interest in him of a sexual nature.  This study shows how the teenage brain processes the taking of risks it seems to focus more on what the reward will be not how great the risk may be.  the amount of the risk does not seem to play much of a controlling factor versus what the reward may be. impulse control is almost nonexistent.  This study shows that such risk taking happens much more during the teenage years than as we grow older and more developed, but that the out comes are many times more tragic and ugly.  There is now a much better understanding as to why so many senseless teenage deaths occur. It is the fact that the teenage brain is still developing and can not judge in a rational manner what the out come of a action or actions maybe, before driving forward in such risky behavior. With this new evidence in mind one can now with reason state that Ms. Rogaz, was the one who had complete control of the situation the night this crime took place.  It was she who used her sexual advances to first lower Darrin's ability to make sound judgments, because his brain still in development was seeing only the reward of "SEX" that was being placed before him, then couple that with Ms. Rogaz, injecting Darrin, with cocaine for the first time and any reasonable person could now see taking this new evidence in to account that Darrin, did not stand a chance that night of over coming her control of him.  A lot was talked about in this case about mental culpability THIS new study sheds new insight into just what Darrin's capacity

(15)

of culpability truly was. Ms. Rogaz was four years older than Darrin, almost the end of the developmental scale as where Darrin was right in the middle of this scale. A full and complete hearing is needed concerning this matter, because in the interest of justice these questions must be answered. Darrin, does not have the resources to fully investigate the full meaning of this new evidence, only a qualified Attorney can assist in such a under taking. Once again Darrin is asking this Honorable Court to put on it's hindsight glasses and look at the following questions:

(A). Is this newly discovered evidence? Yes it is. Was it available at the time of trial or sentencing? No.

(B). Had this new evidence been available at the time of trial would it have been admissible? Yes.

(C). Had this evidence been used to it's fullest during trial is there a strong likely hood the out come would have been different? Darrin believes, yes.

(D). If this new evidence were to be used at sentencing [assuming Darrin would have been found guilty with this new evidence being used] is there a strong likely hood that the sentence would have been different? Darrin, believes, yes.

these are the questions Darrin, is begging this Honorable Court to ask and answer. Had this newly discovered evidence been presented on Darrin's, behalf coupled with his the evidence of all the trouble of his childhood, along with the fact that he truly had the mind set not of a young adult but more that of a fifteen years boy, there can be no doubt that the out come of the whole proceeding would have been different. Darrin, is pleading with this Honorable Court to afford him the chance

to fully present this new evidence, thereby giving him the chance to show this Honorable Court of the true importance of this evidence. For Darrin, believes that once this new evidence is presented in the proper light this Honorable Court will conclude that new proceedings must be had in this matter. Darrin, believes that this issue is valid on it's face, that it meets the requirements to be heard by this Honorable Court where it's new in nature, was unavailable at the time of trial or sentencing, that it goes the issue of what might have been had it been used at trial or even more so at sentencing. a sentence can be attacked at anytime when new evidence comes to light such as the case here. Therefore Darrin, requests that this Honorable Court grant him a full and complete third stage evidence hearing on this matter.

## VIOLATION OF DUE PROCESS

1. Darrin's Constitutionally protected rights concerning Due Process were violated, in that the Trial Court Judge, (the Honorable Judge Mannion) committed a grave error, when he ruled that Darrin, was NOT under the influence of DRUGS and ALCOHOL at the time of his arrest but yet just ten days later used it as a large aggravating factor when finding Darrin, eligible to receive DEATH. This is clear violation of Darrin's Due Process rights to a fair and impartial trial and sentencing. Judge Mannion, clearing had a bias towards someone who used drugs, this is evident by his words during sentencing. One can only wonder what Judge Mannion would have done had he discovered just addiction of Trial Counsel. Laying that aside

(17)