for the moment, Darrin's Trial Counsel filed a Motion to Dismiss Statements that were claimed to have been made by Darrin, at the time of his arrest. The crux of this Motion was that Darrin could not have given informed consent concerning the understanding of his RIGHT because of his intoxication at the time of his arrest. However Judge Mannion in denying Darrin's Motion he stated that he did not believe that Darrin, was impaired or intoxicated at the time of his arrest. Yet just ten days later Judge Mannion, chose to use the information gained during the Motion hearing in aggravation against Darrin, to find him eligible to be sentenced to DEATH. In doing this Judge Mannion, violated Darrin's, Constitutionally protected Right to a fair and impartial trial and sentencing hearing. Judge Mannion can not have his cake and eat it as well. It was his sworn duty to apply the law equally and fairly, sadly in this case he did not and Darrin, has spent the last two plus decades in prison for Judge Mannion's, bias, unprofessional errors. Now Darrin, asks this Honorable Court to use hindsight yet again where his Trial Counsel is concerned, had his Trial Counsel not been so severely addicted to drugs, he may have picked up on this error and raised some type of a objection. Sadly Trial Counsel was asleep at the switch, or under the influence at the switch we may never know, all that is known for sure is he did not challenge this grave error committed by Judge Mannion. Thus Darrin, was not only deprived his Due Process Rights, but denied effective assistance of trial Counsel as well. Also it should be noted that all subsequent Attorneys for reasons unknown failed to raise this issue, maybe not wishing to second guess the trial strategy of Trial Counsel sadly two plus decades

(18)

later we now know that his strategy was where was his next fix coming from. Darrin, is sure had any of his former Attorneys known of his Trial Counsel's addiction they would have brought this and many other issues to the Courts attention. for this reason Darrin, now asks this Honorable Court to relax the rule of waiver and allow these issues to be presented because had it not been for the recent discovery of this new evidence confirming the severe addiction to drugs of Darrin's trial Counsel come to light he would not be before this Honorable Court at this time.

2.  Darrin's Constitutionally protected Right to effective assistance of Counsel was violated when he was represented at trial and sentencing by a man who was severely addicted to drugs and alcohol, during the time that he was retained/hired to represent/protect Darrin. The Justice system failed Darrin, he was not an attorney, his family had no law experience, so they hired who they thought was a upstanding, honorable, sober, officer of the court to represent and protect Darrin. Trial Counsel was clearly not fit to take this case to trial, for any sane or sober attorney would not have put their client on the stand to admit to felony murder when in fact, the client had entered a plea of not guilty. there can be no reasonable way to explain why Trial Counsel would do such a thing. However now we have a reason why, he was more likely than not high and and wondering how he was going to get his next fix. The newly discovered evidence leaves no doubt to the extent of Trial Counsels addiction. (See exhibit "A"). It is now clear that Darrin, did not receive effective assistance of counsel at trial

(19)

and for that reason if for no other Fundamental Fairness and the interest of Justice demand that his conviction be set aside and complete new proceedings be ordered, by this Honorable Court. Also Darrin, claims that all subsequent were ineffective in so much as they did not raise this issue in as much as they were not made known of the degree of Trial Counsel's drug and alcohol abuse and addiction. Darrin is now praying that this Honorable Court will apply what has now come to light and grant him the protection that he is guaranteed under the United States Constitution, and the Constitution of the State of Illinois.

## CONCLUSION

WHEREFORE, the Petitioner, Darrin Shatner, respectfully prays that this Honorable Court will grant his request for Post Conviction relief, in that a new new trial be ordered, or in the alternative a new sentencing hearing. As well as other remedies this Honorable Court see fits to render. Darrin, believes he has shown good cause for these issues to be reviewed by this Honorable Court, and should be granted the relief he seeks.

Respectfully Submitted: Darrin Shatner
Darrin Shatner, Pro-Se
Req. No. B42950
P.O. Box 1000
Menard, Il. 62259-1000

Sworn to and Subscribed to before Me this ____ Day of _____,2012.

_____
Notary Public

(20)

12/2/11 Brain changes significantly after age 18, says Dartmouth res...

Case: 1:12-cv-00047 Document #: 18-2 Filed: 05/04/12 Page 4 of 9 PageID #:634

# Dartmouth College

# Dartmouth News

*Dartmouth News > News Releases > 2006 > February >*

## Brain changes significantly after age 18, says Dartmouth research

*Dartmouth College Office of Public Affairs • Press Release*
*Posted 02/06/06 • Contact Susan Knapp (603) 646-3661*

Two Dartmouth researchers are one step closer to defining exactly when human maturity sets in. In a study aimed at identifying how and when a person's brain reaches adulthood, the scientists have learned that, anatomically, significant changes in brain structure continue after age 18.

The study, called "Anatomical Changes in the Emerging Adult Brain," appeared in the Nov. 29, 2005, on-line issue of the journal Human Brain Mapping. It will appear in a forthcoming issue of the journal's print edition.



Abigail Baird and Craig Bennett (Photo by Joseph Mehling '69)

Abigail Baird, Assistant Professor of Psychological and Brain Sciences and co-author of the study, explains that their finding is fascinating because the study closely tracked a group of freshman students throughout their first year of college. She says that this research contributes to the growing body of literature devoted to the period of human development between adolescence and adulthood.

"During the first year of college, especially at a residential college, students have many new experiences," says Baird. "They are faced with new cognitive, social, and emotional challenges. We thought it was important to document and learn from the changes taking place in their brains."

For the study, Baird and graduate student Craig Bennett looked at the brains of nineteen 18-year-old Dartmouth students who had moved more than 100 miles to attend college. A control group of 17 older students, ranging in age from 25 to 35, were also studied for comparison.

The results indicate that significant changes took place in the brains of these individuals. The changes were localized to regions of the brain known to integrate emotion and cognition. Specifically, these are areas that take information from our current body state



The above image illustrates

Case: 1:12-cv-00047 Document #: 18-2 Filed: 05/04/12 Page 5 of 9 PageID #:634

and apply it for use in navigating the world.

"The brain of an 18-year-old college freshman is still far from resembling the brain of someone in their mid-twenties," says Bennett. "When do we reach adulthood? It might be much later than we traditionally think."

where the brain matured during the study participants' freshman year. Specifically, changes were observed in the cingulate (blue, yellow), caudate (red), and insula (orange). (Image courtesy of Baird, Bennett)

The study was funded by a grant from the National Institute of Child Health and Development.

*Dartmouth has television (satellite uplink) and radio (ISDN) studios available for domestic and international live and taped interviews. For more information, call 603-646-3661 or see our Radio, Television capability webpage.*

Recent Headlines from Dartmouth News:

- Dartmouth helps found a global network of universities [06/04/10]
- Dartmouth moves to improve recycling rate [06/02/10]
- Class of 1953 Commons dedicated [05/27/10]
- Dartmouth's Big Green Bus ready for 6th-annual cross-country educational tour [05/26/10]
- Rockefeller Center students to host New Hampshire/Vermont conference on homelessness [05/21/10]
- Sign-up to receive Dartmouth News via email

BRENT D. HOLMES
H. KENT HELLER
FRED JOHNSON
MARK E. BOVARD
HEATH UPPENCAMP*

HARLAN HELLER
RETIRED

LAW OFFICES OF
**HELLER, HOLMES & ASSOCIATES, P.C.**
A PROFESSIONAL CORPORATION
1101 BROADWAY
P.O. BOX 889
MATTOON, ILLINOIS 61938-0889
(217) 235-2700
FAX NO. (217) 235-0743



December 2, 2011

## LEGAL MAIL

Mr. Darrin Shatner #B42950
Menard Correctional Center
P.O. Box 1000
Menard, IL 62259

Re: Human Brain Development
Our File No. 16857

Dear Darrin:

Enclosed is a copy of the Dartmouth College News concerning brain development after age 18.

Very truly yours,

H. Kent Heller

HKH/kjs
Enc.
c:shatner13\16857.ltr/kjs\12022011

*Admitted In Indiana

Jan 25, 2012 1:28 PM
Apr 30, 2012 1:09 PM

## AFFIDAVIT OF THOMAS F. SHEEHAN

I, Thomas F. Sheehan, first being duly sworn, state the following under oath and the penalty of perjury:

1. My name is Thomas F. Sheehan and I am 66 years old.
2. I live at 1100 N. Linden, Oak Park, IL 60302.
3. I am the brother-in-law of Attorney Michael G. Cheronis.
4. I had known Michael since 1972 and had been close with him on a personal basis until his suicide death in 2001.
5. Michael was an accomplished, hard working attorney until he began to experiment with hard drugs in 1980. Throughout the 80's it became obviously worse as the years went on.
6. I personally knew many of Michael's former clients as well as his legal assistant in his office and learned firsthand how the drug usage was affecting his practice.
7. Many of the judges he appeared before reprimanded him for excessive requests for continuances or for not being prepared at trial time.
8. More than a few of Michael's clients found themselves without representation when Michael would withdraw from the case when additional fees he requested were not forthcoming.
9. By the late 1980's Michael was spending the money he received on drugs and in strip bars and sex clubs in the suburban area. In some cases I saw this behavior firsthand.
10. I also witnessed Michael using drugs on many occasions while we were out together, or in his home or in my home.
11. By the early 1990's his behavior had become very erratic, and the drug usage now included barbiturate abuse in addition to the cocaine and alcohol.
12. His legal practice had all but evaporated. He fell into bankruptcy and lost his home and had to move his family into a series of rental apartments.
13. Although I do not personally know Darrin Shattner, I can absolutely attest to the fact that during the period of time Michael represented Mr. Shattner, Michael was seriously impaired due to his drug usage on a constant basis. By 1995/1996, Michael's health declined and Michael fell into serious depression. Unfortunately, his drug and alcohol use continued.
14. From 1996-2000, Michaels life became one of inactivity and further depression. In late 2000 he barricaded himself in his home and discharged firearms. The Cook County Swat Team and the Oak Park Police had to evacuate neighbors and take Michael into custody.
15. While this case was pending, Michael shot himself in the head on January 2, 2001.

16. I am providing this affidavit freely and voluntarily. No one has given me and reward for this affidavit. No one has forced me to provide this affidavit. I do not know any of the particulars of Mr. Shatters' case and have no opinion as to his guilt or innocence.
17. I do know, however, that during the time Michael represent him, Mr. Shattner received inadequate representation because of Michael's condition and behavior.

The contents of this affidavit are true and accurate to the best of my knowledge and recollection. If called upon to testify, I could do so competently. Further affiant sayeth not.

Signed _____

Subscribed and sworn to before me this 7 day of December, 2011

Notary Public _____

OFFICIAL SEAL
MORTIMER SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/23/15

STATE OF ILLINOIS    )
                     )   ss
COUNTY OF COOK       )

## AFFIDAVIT

DARRIN SHATNER, being first duly sworn upon oath, deposes and states as follows:

1. Affiant is the defendant in Case No. 91-CR-2026.

2. At trial and sentencing in this cause defendant was represented by Mr. Michael Cheronis.

3. Affiant signed a waiver of jury with respect to the sentencing hearing prior to jury selection for his trial.

4. Prior to signing that waiver, Mr. Cheronis did not explain to affiant that the imposition of the death penalty would require the unanimous finding of all 12 jurors, and that one holdout juror would be sufficient to require that no death penalty be imposed.

5. Affiant did not become aware of this fact until after he had been sentenced to death and transferred to death row.

6. Prior to signing the waiver, the only conversation with Mr. Cheronis concerning this matter was in open court shortly before signing the waiver.

7. Mr. Cheronis told affiant that he had known the judge for 18 years, that the judge was not going to give affiant the death penalty, and that affiant should sign the waiver so that they could go ahead and pick the trial jury.

8. Affiant relied upon the advice from Mr. Cheronis, and did not understand the significance of the waiver at the time.

9. Had affiant been aware at the time, that one holdout juror